IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
July 13, 2006 Session

## DAWN NEPP, ET AL. v. MARGARET HART, ET AL.

**A Direct Appeal from the Circuit Court for Williamson County**
**No. 03405     The Honorable Timothy Easter, Judge**

**No. M2005-2024-COA-R3-CV - Filed on September 7, 2006**

This is an appeal of a judgment on a jury verdict.  Plaintiffs- homeowners contracted with a construction company, a corporation wholly owned by a single stockholder, to construct their residence.  Because of alleged breach of contract and negligent construction, the homeowners filed suit against the corporation and also the sole stockholder and his wife, a director, alleging that they were in fact the alter egos of the corporation.  Prior to trial, the corporation was voluntarily dismissed by the homeowners, and the case was tried against the individual defendants on the alter ego theory. The jury found that owner-defendants were liable under the alter ego theory for negligent construction and breach of contract.  Judgment was entered on the jury verdict.  Plaintiffs-homeowners appealed stating that the trial court erred in dismissing some of the other causes of action, but a review of the record reveals that no motion for a new trial was filed by plaintiffs-homeowners as required by Tenn. R. App. P. 3 (e), and thus those issues are waived.  The individual defendants asserted affirmative issues for review as cross appellants.  Although the individual defendants filed a motion for a new trial, many of the issues raised were not specifically stated therein and are consequently considered waived on appeal by virtue of Tenn. R. App. P. 3 (e). Finding that there is material evidence to support the jury verdict, we affirm.

**Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Circuit Court Affirmed**

W. FRANK CRAWFORD, P.J., W.S., delivered the opinion of the court, in which ALAN E. HIGHERS, J. and DAVID R. FARMER, J., joined.

John Cobb Rochford, Jeff T. Goodson, and John Palmer Webb of Nashville, Tennessee for Appellants, Dawn Nepp and Doug Merrick

William Caldwell Hancock of Nashville, Tennessee for Appellees, Margaret Hart and Thomas Hart

## OPINION

On or about   November 12, 2002 Dawn Nepp and Doug Merrick (together the "Homeowners," "Plaintiffs," or "Appellees") entered into a contract with Thomas E. Hart General

Contracting, Inc. ("Hart Contracting") for the construction of an addition to their home in Williamson County, Tennessee. The Homeowners paid $32,250 prior to Hart Contracting beginning the project. Construction was to begin on December 6, 2002; however by mid-January of 2003, Hart Contracting had not begun the project. Thomas E. Hart, the owner of Hart Contracting alleged that the construction delay arose from a "problem at the permit office." [1] When little or no work had been completed by March 13, 2003, the Homeowners met with Mr. Hart to discuss terminating the contract and a refund. Mr. Hart assured the Homeowners that the project would move forward without delay. However, the record indicates that Hart Contracting did not move forward. On May 9, 2003, the Homeowners agreed to amend their contract with Hart Contracting because the time line set out in the original contract was past. Even after the change orders were negotiated, Hart Contracting continually failed to meet its obligations.

On July 17, 2003, the Homeowners filed their original Complaint against Hart Contracting and Thomas E. Hart, as President, of Hart Contracting. The Homeowners sought damages for breach of contract and for negligence in the construction of certain aspects of the contracted work. The Homeowners further averred that Hart Contracting had committed "fraud, misrepresentation, negligent misrepresentation and violations of the Tennessee Consumer Protection Act" based, in part, upon the failure to notify the Homeowners of the administrative dissolution of Hart Contracting, *see supra* fn. 1. On August 20, 2003, Hart Contracting and Mr. Hart filed an "Answer and Counter-Complaint" against the Homeowners. The Answer admits the existence of a contract but denies all breach, negligence, fraud, misrepresentation, and Tennessee Consumer Protection Act violations. The Counter-Complaint seeks money judgment for the value of labor actually expended and materials actually installed at the job site, and for damages in the form of lost profits when the Homeowners allegedly terminated the contract prematurely and refused access to the work site. On August 20, 2003, citing procedural and substantive deficiencies in the original Complaint, Hart Contracting and Mr. Hart also moved the court to dismiss the Homeowners' Complaint or, in the alternative for summary judgment under Tenn. R. Civ. P. 56.01 and 56.02.

On September 4, 2003, the Homeowners moved the court for leave to amend their Complaint. The proposed "First Amended Complaint" incorporated the claims of fraud, breach of construction contract, and negligent construction as set out in the original Complaint. In addition, the First Amended Complaint alleged that Thomas Hart and the proposed new defendant Margaret Hart (together the "Harts," "Defendants," or "Appellees") were personally liable for all bad acts of Hart Contracting based upon Homeowners' assertion that the Harts were, in fact, the alter ego of Hart Contracting and that the company had "no independent existence." On September 22, 2003, Hart Contracting and Thomas Hart filed a "Response in Opposition to the Motion to Amend." On September 22, 2003, the Homeowners filed their Answer to the Counterclaim.

The trial court heard the Homeowners' motion to amend the Complaint on September 23, 2003 and, by Order of October 8, 2003, granted that motion allowing the joinder of Margaret Hart

---

[1] The record indicates that, on February 21, 2003, the Secretary of State administratively dissolved Hart Construction. Hart Construction was reinstated on August 5, 2003 after filing the necessary paperwork with the State.

as a defendant in this matter. The October 8, 2003 Order indicates that "Defendants' Response in Opposition to the Motion to Amend shall be considered a Motion to Dismiss the First Amended Complaint for failure to state a claim for relief." The Homeowners were given until September 26, 2003 to respond to Defendants' "motion to dismiss." On September 25, 2003, the Homeowners filed their "Response in Opposition to Motion to Dismiss." The motion to dismiss the amended complaint was heard by the trial court and, on September 30, 2003, the trial court entered an Order, holding in relevant part that:

> The allegations of fraud, misrepresentation, negligent misrepresentation and breach of the Tennessee Consumer Protection Act are dismissed. Plaintiffs may proceed on their theories of negligent construction and breach of contract against all three defendants.

The "First Amended Complaint" was filed on October 17, 2003; however, the "First Amended Complaint" contains the allegations of fraud, misrepresentation, negligent misrepresentation and breach of the Tennessee Consumer Protection that were specifically dismissed by the trial court in its September 30, 2003 Order, *supra*. On October 29, 2003, the Harts filed a motion to alter or amend the September 30, 2003 Order, in which they assert that "the order dismissing all claims except breach of contract or negligence claims but leaving Thomas E. Hart and Margaret Hart as individual defendants is inconsistent with the surviving claims put forth by Plaintiff." By their motion, the Harts assert that they should be dismissed as individual defendants in the case. This filing was followed, on October 31, 2003, by a "Motion to Strike" asking that certain averments contained in the "First Amended Complaint" be stricken from the pleading and the case as improper and impertinent under Tenn. R. Civ. P. 12.06. On November 3, 2003, the Homeowners filed their "Response in Opposition to Defendants' Motion to Alter or Amend Order."

The trial court entered two orders addressing the motion to alter or amend and the motion to strike. The first of these orders, entered on November 21, 2003 states, in relevant part, that:

> ORDERED that the allegations remaining in Plaintiffs' First Amended Complaint are the six paragraphs contained in Count II–Negligence and Count III-Breach of Contract. It is further ORDERED that the Defendants' Motion to Strike is denied as moot and that Defendants' Motion to Alter or Amend is denied.

The second Order, entered on December 4, 2003, reads, in pertinent part:

> ORDERED that Defendants' Motion to Alter or Amend this Court's Order of September 30, 2003 is denied. It is further ORDERED that Defendants' Motion to Strike allegations contained in the First Amended Complaint is denied.

On December 19, 2003, Defendants filed their joint "Answer to the First Amended Complaint." Shortly thereafter, the case was reassigned to another trial judge. On March 24, 2004, the trial court issued an Order holding discovery in abeyance pending completion of deposition of the parties and disposition of any motions for summary judgment.

On August 9, 2004, Hart Contracting and Thomas Hart filed a motion to amend the counterclaim, which was originally filed on August 20, 2003. By Agreed Order, entered on August 13, 2004, the Defendants were allowed to amend their counterclaim. The "First Amended Counter-Complaint" was filed on August 13, 2004. On September 10, 2004, the Homeowners filed their "Answer to Defendants' First Amended Counter-Complaint."

On December 3, 2004, the Homeowners filed a motion for partial summary judgment, along with a statement of undisputed material facts, affidavit of Dawn Nepp, and memorandum of law in support thereof. On December 28, 2004, the Defendants filed a joint Response in opposition to the Homeowners' motion for partial summary judgment as well as a response to the Homeowners' statement of undisputed facts, which response was supported primarily by the Affidavit of Thomas Hart. The motion for partial summary judgment was heard on February 23, 2005. The trial court entered an Order on March 17, 2005, which reads, in relevant part:

> 1. The motion for partial summary judgment seeking to pierce the corporate veil is denied. The Court finds disputes as to material facts, but finds that the Plaintiffs may proceed against the Harts personally. However, if at the conclusion of Plaintiffs' proof there is insufficient evidence to pierce the corporate veil, the Court will entertain a motion to dismiss the Harts personally.

By agreed scheduling order, the matter was set for jury trial on June 29 and 30, 2005. On June 15, 2005, Hart Contracting filed a "Suggestion of Bankruptcy" with the trial court, along with a copy of Hart Contracting's voluntary Chapter 7 bankruptcy petition. On June 22, 2005, the Homeowners voluntarily dismissed Hart Contracting as a party to this suit. An Order dismissing Hart Contracting was entered on June 28, 2005. On June 23, 2005, the Harts filed a joint motion to continue the case indefinitely pending the outcome of the bankruptcy proceedings of Hart Contracting. The Homeowners opposed the motion to continue. Prior to the ruling on the motion to continue, on June 24, 2005, the Defendants filed a Motion to Dismiss on the grounds that "[n]either of the individual Defendants signed a contract or breached the contract independent of the corporate defendant, nor does the complaint allege that either individual defendant negligently constructed the Plaintiffs' addition...[h]aving now dismissed the corporation from the suit, there is nothing left for Plaintiff to pursue." On June 24, 2005, the Homeowners filed their Response in opposition to the Defendants' motion to dismiss.

On June 27, 2005, the Homeowners filed "Plaintiffs' Motion for Relief from Orders," which reads, in pertinent part, as follows:

Come now the Plaintiffs, pursuant to Tennessee Rule of Civil Procedure 60.02 and submit this Motion for Relief from Orders. Specifically, Plaintiffs request this Court to alter and amend this Court's Orders of September 30, 2003 and November 21, 2003 dismissing Count 1 of the First Amended Complaint, as well as the allegations in support of these claims alleging fraud, misrepresentation, negligent misrepresentation and breach of the Tennessee Consumer Protection Act.[2]

The matter proceeded to trial before a jury on June 30, 2005. At the close of the Homeowners' proof, Defendants made two motions for directed verdict. The first motion took the position that the damages proof proffered by the Homeowners was insufficient to sustain a damages verdict as a matter of law. The trial court overruled this motion. The second motion took the position that the Homeowners' proof was not adequate as a matter of law to justify a jury verdict in favor of the Homeowners against either Thomas Hart or Margaret Hart on an alter ego or piercing the corporate veil theory. The trial court took this second motion under advisement.

The questions put to the jury in the instructions were:

1. Do you find that Thomas Hart is the alter ego of Thomas E. Hart General Contracting, Inc.?
2. Do you find that Margaret Hart is the alter ego of Thomas E. Hart General Contracting, Inc.?
3. If you found that Thomas Hart is the alter ego of Thomas E. Hart General Contracting, Inc., do you find him liable for negligent construction?
4. If you found that Margaret Hart is the alter ego of Thomas E. Hart General Contracting, Inc., do you find her liable for negligent construction?
5. If you find that Thomas Hart is the alter ego of Thomas E. Hart General Contracting, Inc., do you find him liable for breach of contract?
6. If you find that Margaret Hart is the alter ego of Thomas E. Hart General Contracting, Inc., do you find her liable for breach of contract?
7. How much, if any, are plaintiff claimants' damages?

---

[2] We note that the trial court did not rule on this "Motion for Relief from Orders." The trial court was correct in not addressing this motion. The September 30, 2003 and November 21, 2003 orders are clearly interlocutory in nature. Tenn. R. Civ. P. 60.02 allows for relief from final judgments only.

The jury answered each of these questions in the affirmative, and found damages in the amount of $61,587.00. On July 11, 2005, the trial court entered its Judgment, which reads, in relevant part, as follows:

> [T]he jury found as follows:
>    1. Thomas Hart is the alter ego of Thomas E. Hart General Contracting, Inc.
>    2. Margaret Hart is the alter ego of Thomas E. Hart General Contracting, Inc.
>    3. Thomas Hart is liable for negligent construction.
>    4. Margaret Hart is liable for negligent construction.
>    5. Thomas Hart is liable for breach of contract.
>    6. Margaret Hart is liable for breach of contract.
>    7. Plaintiffs' damages are $61,587.00
>
> Accordingly, it is ordered that judgment be entered in favor of the Plaintiffs and that Plaintiffs recover the sum of $61,587.00....[3]

On August 9, 2005, the Defendants filed "Defendants' Motion to Alter or Amend or in the Alternative for a New Trial" (the "Motion for New Trial"), which reads, in pertinent part, as follows:

> As grounds for this motion, Defendants would show this Court as follows:
>
> *                             *                           *
>
> 4. Plaintiffs failed to provide proof of damages to property as required by T.C.A. § 24-5-114. Plaintiffs offered testimony only on the bills paid to GEC, Inc., and no testimony other than that of the plaintiffs was offered to establish the cost of repair.
>
> 5. Plaintiffs failed to meet their burden to establish that Margaret Hart is a shareholder of Thomas E. Hart General Contracting, Inc., and in order to find Margaret Hart personally liable under the alter ego theory, the plaintiffs had the exclusive burden of proving that she was in fact a shareholder or that she had acted as an alter ego of the corporation. Plaintiffs failed to offer any proof that Mrs. Hart was a

---

[3] We note that the Counter-Complaint filed by Hart Contracting and Thomas Hart was never resolved during the course of these proceedings. Nonetheless, the trial court's inclusion of Tenn. R. Civ. P. 54.02 language in its July 11, 2005 Judgment renders the Judgment final for purposes of this appeal.

shareholder or that she had engaged in any other conduct other than to write some checks for payroll.

6. The trial should not have been conducted in the absence of the corporate defendant as the plaintiffs had alleged claims only against the corporation for breach of contract and negligence which they dismissed voluntarily and trying the case against the individual defendants without first establishing the liability of the corporate defendant was improper.

On August 10, 2005, the Homeowners filed their "Notice of Appeal," in which they specifically appeal from the July 11, 2005 Judgment. The Homeowners raise two issues for review as stated in their brief:

1. Whether the trial court erred in dismissing the claim of Dawn Nepp and Doug Merrick for damages under the Tennessee Consumer Protection Act.

2. Whether the trial court erred in striking allegations contained in the First Amended Complaint in support of the claim for damages under the Tennessee Consumer Protection Act.

We do not reach the merits of the Homeowners' issues in this case because of procedural aspects. The issues raised by the Homeowners arise from the trial court's orders of September 30, 2003 and November 21, 2003. As discussed above, the Homeowners filed a Tenn. R. Civ. P. 60.02 motion for relief from these orders; however, this filing was moot because the September 30, 2003 and November 21, 2003 orders were interlocutory in nature. Nonetheless, once the final order in this case was entered on July 11, 2005, the Homeowners could raise any issues arising from the trial or any interlocutory orders so long as all procedural requirements were met. This case was tried to a jury and, under Tenn. R. App. P. 3(e), the Homeowners were required to raise their issues first in a motion for new trial, to wit:

[I]n all cases tried by a jury, no issue presented for review shall be predicated upon error in the admission or exclusion of evidence, jury instructions granted or refused, misconduct of jurors, parties or counsel, or other action committed or occurring during the trial of the case, or other ground upon which a new trial is sought, unless the same was specifically stated in a motion for a new trial; otherwise such issues will be treated as waived.

Having failed to call the trial court's attention, by way of a motion for new trial, to the alleged errors cited, the Homeowners have waived their right to be heard on those issues.

-7-

The Defendants, as cross-appellants, raise the following issues for review, as stated in their brief:

> 1.  Whether plaintiffs' appeal is properly before this court under Tenn. R. App. P. 3(a) and 9 or Tenn. R. Civ. P. 54.02?
>
> 2.  Whether the first amended complaint claims asserted against Margaret Hart and Thomas Hart individually for breach of contract and negligent construction under a contract to which they are neither parties nor in privity should have been dismissed in the September 30, 2003 order pursuant to Tenn. R. Civ. P. 12.02(6)?
>
> 3.  Whether the trial court's eve of trial denial of the timely and well taken motion of Thomas Hart and Margaret Hart for continue [sic] the trial, without coincidentally implementing protective provisions in the judgment, by the shaping of relief, or ordering other measures to avoid prejudice to the individual defendants, resulted in or contributed to a trial setting so unfair and prejudicial that no reasonable juror could have been expected to return a verdict in either Margaret Hart or Thomas Hart's favor?
>
> 4.  Whether denial of the motion to dismiss plaintiffs' claims against Margaret Hart and Thomas Hart, based on theories of negligence and piercing the corporate veil, where the corporation had not previously been adjudicated as indebted to plaintiff or with regard to its comparative fault, was error?
>
> 5.  Whether the trial court's introductory statements to the jury, the answers to voir dire questions heard by the entire venire, and the plaintiffs' opening statement resulted, separately or in combination, in a trial atmosphere wherein no reasonable juror could have returned a verdict in favor of either Thomas Hart or Margaret Hart?
>
> 6.  Whether the jury was unduly prejudiced by the negative atmosphere caused by certain venire persons responses to the trial court's voir dire questions?
>
> 7.  Whether by adopting the language used by the trial court in his opening statement, plaintiffs' counsel further mislead the jury regarding the roles of Thomas E. Hart Contracting, Inc., Thomas Hart and especially non-participant Margaret Hart in this dispute?

8. Whether the inadequate instructions given to the jury, combined with the questions contained in the verdict form, produced a situation in which no reasonable juror could have returned a verdict in favor of either Thomas Hart or Margaret Hart?

9. Whether the jury's verdict is supported by the evidence?

10. Whether the trial court should have directed a verdict at the close of plaintiffs' proof on all issues, or should have granted the post-trial motion to set aside the verdict and should have entered judgment dismissing the case against both Thomas Hart and Margaret Hart?

Based upon our determination that the Homeowners have waived their issues on appeal, we pretermit the Defendants' first two issues. Unlike the Homeowners in this case, the Defendants did file a Motion for New Trial. As discussed above, Tenn. R. App. P. 3(e) requires that any "ground upon which a new trial is sought" must be raised in the motion for new trial or same is waived on appeal. After a careful review of the Defendants' Motion for New Trial, it is apparent that not all of the issues set out above were "specifically stated" in that motion. We find, therefore, that Defendants have waived issues three (3), five (5), six (6), seven (7), and eight(8) because of their failure to specifically state those issues in the Motion for New Trial. We perceive the remaining issues to be as follows:

1. Whether a party may seek to pierce the corporate veil when there is no finding of liability on the part of the corporation?[4]

2. Whether there is sufficient evidence to conclude that Margaret Hart is an alter-ego of Thomas E. Hart General Contracting, Inc.?[5]

3. Whether there is sufficient proof of damages?[6]

In their brief, the Harts assert that the Homeowners' claims should never have gone forward in the absence of a finding that Hart Contracting was liable for breach of contract and/or negligent construction. However, the Harts cite no authority for this contention. As we have recognized, "[f]ailure to cite authority for propositions in arguments submitted on appeal constitutes waiver of the issue." ***Messer Griesheim Industries, Inc. v. Cryotech of Kingsport, Inc.***, 131 S.W.3d 457, 474 (Tenn.Ct.App.2003). In order for an issue to be considered on appeal, a party must, in his or her

---

[4] This issue is set out in paragraph 6 of the Motion for New Trial, *supra*.

[5] We note that the Defendants have only raised an issue in their Motion for New Trial (see paragraph 5 thereof, *supra*) as to whether there is sufficient evidence to conclude that Margaret Hart is the alter-ego of Thomas E. Hart Contracting, Inc., and have raised no issue concerning whether Thomas Hart is the alter-ego of this corporation.

[6] This issue is set out in paragraph 4 of the Motion for New Trial.

brief, cite to the record and to authority in order to support the averred position as required by Tenn. R. App. P. 27(a). "Where a party makes no legal argument and cites no authority in support of a position, such issue is deemed to be waived and will not be considered on appeal." *Hawkins v. Hart*, 86 S.W.3d 522, 531 (Tenn. Ct. App.2001) (citations omitted). Consequently, we find that the first issue is waived due to the Harts' failure to cite authority or develop their argument in relation to such authority.

Turning to the record in this case, we nonetheless conclude that there is sufficient evidence from which a jury could conclude that the Harts are the alter-egos of Hart Contracting. Where, as here, a trial judge has approved a jury's verdict, our standard of review is whether there is any material evidence to support the jury's verdict. Tenn. R. App. P. 13(d). Absent a reversible error of law, we will set aside a judgment on a jury verdict only where the record contains no material evidence to support the verdict. *Foster v. Bue*, 749 S.W.2d 736, 741 (Tenn.1988). Furthermore, the weight, faith, and credit to be given to any witness' testimony lies in the first instance with the finder of fact and the credibility accorded will be given great weight in this Court. *Town of Alamo v. Forcum-James Co.*, 327 S.W.2d 47, 49 (Tenn. 1959); *Mays v. Brighton Bank*, 832 S.W.2d 347, 352 (Tenn. Ct. App.1992).

Piercing the corporate veil is an equitable doctrine to prevent the use of a corporate entity to defraud or perform illegal acts. *See, Schlater v. Haynie*, 833 S.W.2d 919, 925 (Tenn. Ct. App.1991); *Oak Ridge Auto Repair Service v. City Finance Co.*, 425 S.W.2d 620, 622 (Tenn.Ct.App.1967); *Muroll Gesellschaft M.B.H. v. Tenn. Tape, Inc*., 908 S.W.2d 211, 213 (Tenn. Ct.App.1995). "The determination of whether to disregard the corporate fiction depends on the special circumstances of each case, and 'the matter is particularly within the province of the trial court.'" *Oceanics Schools, Inc. v. Barbour*, 112 S.W.3d 135, 140 (Tenn. Ct .App.2003) (quoting *Electric Power Bd. of Chattanooga v. St. Joseph Valley Structural Steel Corp*., 691 S.W.2d 522, 256 (Tenn.1985)).

"Factors to be considered in determining whether to disregard the corporate veil include not only whether the entity has been used to work a fraud or injustice in contravention of public policy, but also: (1) whether there was a failure to collect paid in capital; (2) whether the corporation was grossly undercapitalized; (3) the nonissuance of stock certificates; (4) the sole ownership of stock by one individual; (5) the use of the same office or business location; (6) the employment of the same employees or attorneys; (7) the use of the corporation as an instrumentality or business conduit for an individual or another corporation; (8) the diversion of corporate assets by or to a stockholder or other entity to the detriment of creditors, or the manipulation of assets and liabilities in another; (9) the use of the corporation as a subterfuge in illegal transactions; (10) the formation and use of the corporation to transfer to it the existing liability of another person or entity; and (11) the failure to maintain arms length relationships among related entities." *Id*. (quoting *Federal Deposit Ins. Corp. v. Allen*, 584 F.Supp. 386, 397 (E.D.Tenn.1984)). The party requesting that the corporate entity be disregarded has the burden of presenting facts demonstrating the need for such relief. *Id*. No one factor is conclusive. *Id*.

Turning to the record in this case, we find that there is sufficient evidence on which the jury could conclude that Thomas Hart is the alter-ego of Hart Contracting. Mr. Hart testified that Hart Contracting operated out of the Harts' home. In addition, Mr. Hart testified that the Harts co-mingled the funds of Hart Contracting with their personal, household funds, to wit:

Q. Mr. Hart, do you remember testifying in your deposition that in the original down payment my clients gave you in the amount of over $32,000 you put $6,250 directly into a personal account. Do you remember saying that?

A. Yes, I do.

Q. Even though that check was written to the corporation you transferred those funds directly into a personal account?

A. I did that because in the interest of time. It's a long story.

Q. I'm not going to go through all of your checks today, Mr. Hart, but I want to hand you another one.
Mr. Hart, what I've handed you is a copy of a check written to Thomas E. Hart General Contracting from my clients in the amount of $5,000 on April 16, 2003; isn't that true?

A. Yes.

*                              *                              *

Q. Mr. Hart, you don't deny that part of this check was transferred directly into a personal rather than corporate account, do you?

A. No, evidently I deposited part of it into the personal account?

Q. I want you to look at the next page, April 15 of 2003, another check written by my clients to Thomas E. Hart General Contracting dated April 15, 2003, amount of $2,500. This check was also deposited in a personal account. You don't deny that, do you?

A. No, I don't deny that. I put money into the personal account and we can prove it because that was the only debit card, charge card I had at the time. I used that predominately for my purchases because it was easier. We spent more out of the personal account, I do believe, than we ever deposited of their funds. And, you know,

-11-

obviously I was doing something wrong. I did everything in the interest of time.

Not only does the record show that monies were handled interchangeable between the Harts' personal checking account and the business account, but it also undisputedly indicates that Mr. Hart is a shareholder of Hart Contracting and that he is primarily responsible for contracting on the part of the company. Turning to Mrs. Hart, there is some dispute in the record as to whether she is a shareholder of Hart Contracting, to wit:

Q. Mr. Hart, do you remember on October 13 of 2002 you swore under oath that your wife, Margaret Hart, is shareholder of Thomas E. Hart General Contracting, Inc.... Mr. Hart, I'm reading from Interrogatory 3. Please respond as follows: State the name of each director of Hart Contracting.

B, state the name of each stockholder or shareholder of Hart Contracting.

And C, state the name and position of each officer of Hart Contracting.

Answer: Thomas E. Hart, president of Hart Contracting, shareholder and director.

Margaret Hart, secretary of Hart Contracting, shareholder and director.

If you look at the second page, Mr. Hart, you can see that's your signature and it's dated October 13 of 2003.

Do you deny that you made this statement?

A. Obviously I signed this. I have not been totally familiar with all the corporation things that is [sic] done by our CPA and our attorneys. And Margaret generally handled that. And we did all the forms that we were supposed to and if I listed her as a shareholder. I don't know where this–I don't really even know where this piece of information or why it was done. I think they're asking me certain things about who worked on the project. This is part of yet another thing. This was a mistake.

Concerning her role in Hart Contracting, Mrs. Hart testified, in relevant part, as follows:

-12-

Q. You are Margaret Hart and you are secretary of Thomas E. Hart General Contracting, aren't you?

A. Yes.

Q. And you denied being a shareholder in the corporation; is that true?

A. I've never been a shareholder, no.

Q. You claim your husband is the only shareholder?

A. My husband is the only, that's how it was set up from the beginning.

Q. Do you deny that your husband swore under oath you also were a shareholder?

A. I think he explained that he was confused by what the term meant. But, in fact, if you look at the original charter of the corporation it says, Thomas Hart being the only shareholder. And that was back in I believe June, July of '98, I think. And the actual incorporation took place in October of that year.

Q. Ms. Hart, have you heard your husband testify that he is the only director of Hart Contracting?

A. Yes, I just heard him say that.

Q. Is that true?

A. That's true.

Q. So you have not been or are not a director of Hart Contracting?

A. Well, I thought I was. Now I understand that I'm not.

Q. Ms. Hart, I'm holding in my hand a document that your attorney provided to me in this lawsuit. And it's a corporation annual report filed with the State of Tennessee, and it states, list board of directors, Thomas E. Hart and Margaret J. Hart and it's signed by you.

Do you deny the existence of this document?

A. No.

Q. So you told the State of Tennessee that you're a director of this company but you're telling us that you're not?

A. Yes, sir. We misunderstood what the terms meant. I thought as secretary I was also an officer.

Even though there is dispute in the record as to Mrs. Hart's role in the company, there is sufficient evidence on which a reasonable jury could conclude that she is a shareholder of Hart Contracting or that she held herself out to be a shareholder or director. There is also sufficient evidence that she knew that monies were being mishandled, to wit:

Q. And Ms. Hart, in your deposition you claim that you were responsible for handling the books of this corporation; is that true?

A. I did the books, yes. I was supposed to do the books.

\*                                    \*                                    \*

Q. And Ms. Hart, you admitted in your deposition that even though you were responsible for handling the books of this company, you knew that personal funds were being used for this project. Do you remember saying that?

A. If he [Mr. Hart] was using that debit card off the personal account to buy materials for the job, then I guess you could say–I guess, it depends on how you look at it.

Q. Well, do you remember saying in your deposition that you knew that personal funds out of your personal account were being used for this project? Do you remember saying you knew that in your deposition?

A. I can't say honestly that I remember saying those exact words. Maybe I did.

Q. Do you need me to refresh your recollection?

A. Sure. Please.

Q. Question–this is page 10 of your deposition: I think you may have heard your husband testify earlier that some personal funds were expended on the project for my clients and some corporate funds were

deposited directly in your personal account. Did you hear that testimony?

Answer: I did.

Question: Did you know that that was going on at the time?

Answer: I think so.

> Do you remember that now?

A. I do now.

Q. You don't deny that you knew–

A. I said that I thought so, yes.

Q. So you now admit that you knew at the time that your own personal funds from a personal account were being used on this project from my clients?

A. What I thought was just what you said. I believe I was probably aware of that. I was not watching what he [Mr. Hart] was doing on a daily basis, weekly basis or whatever.

Q. Ms. Hart, do you remember admitting in your deposition that as the secretary of this corporation, this sort of activity is not appropriate; do you remember saying that?

A. Yes, I do....

Viewing the record in its entirety, we conclude that there is sufficient evidence, including but not limited to that set out above, from which the jury could conclude that the Harts are the alter-egos of Hart Contracting. We now turn to the question of whether the award of damages is supported by the evidence in record.

In *GSB Contractors, Inc. v. Hess*, 179 S.W.3d 535 (Tenn. Ct. App. 2005), this Court has discussed the measure of damages in cases arising from breach of construction contracts, to wit:

> As a general rule, the measure of damages for defects and omissions in the performance of a construction contract is the reasonable cost of the required repairs. *Estate of Jessee v. White*, 633 S.W.2d 767 (Tenn.App.1982). This is especially true when the structure involved

is the owner's home. ***Edenfield v. Woodlawn Manor, Inc***., 62 Tenn.App. 280, 462 S.W.2d 237 (1970). However, in the event that the cost of repairs is disproportionate when compared with the difference in value of the structure actually constructed and the one contracted for, the diminution value may be used instead as the measure of damages. ***Redbud Cooperative Corporation v. Clayton***, 700 S.W.2d 551 (Tenn.App.1985). *However, this rule is applicable only when proof has been offered on both factors*.

***Id***. at 543 (emphasis in original).

In the instant case, Kevin Russell, a contractor, and Ronald Jones, owner of an engineering and contracting company, testified as to the Homeowners' damages. Messrs. Russell and Jones testified extensively concerning the cost of repairing the Homeowners' house. The testimony of these witnesses is largely undisputed in the record and we find that jury award of $61,587.00 is within the range of damages supported by this record.

For the foregoing reasons, we affirm the Judgment of the trial court. Costs of this appeal are assessed one-half against the Appellants, Dawn Nepp and Doug Merrick, and their surety, and one-half against the Appellees, Thomas E. Hart and Margaret Hart.

_____
W. FRANK CRAWFORD, PRESIDING JUDGE, W.S.