**MUROLL GESELLSCHAFT M.B.H.,**
**Plaintiff/Appellee,**

v.

**TENNESSEE TAPE, INC., Cellux Converters, Inc., and Jerry Teal, Defendants/Appellants.**

Court of Appeals of Tennessee, Middle Section, at Nashville.

May 17, 1995.

Application for Permission to Appeal Denied by Supreme Court Sept. 25, 1995.

John R. Jacobson, Bass, Berry & Sims, Nashville, for Plaintiff/Appellee.

William P. Jones, Jones & Longmire, Hendersonville, for Defendants/Appellants.

## OPINION

TODD, Presiding Judge, Middle Section.

The defendants, Tennessee Tape, Inc., Jerry Teal, and Cellux Converters, Inc., have appealed from a non-jury judgment against them and in favor of the plaintiff, Muroll Gesellschaft, M.B.H., for $124,877.24, plus uncomputed pre-judgment interest. It is uncontroverted that Tennessee Tape, Inc., owes plaintiff $124,877.24 for merchandise purchased from plaintiff. The only questions before the Trial Court and this Court involve the liability of Jerry Teal and Cellux Converters, Inc., for the debt of Tennessee Tape, Inc.

As stated by defendants, the issue on appeal is: "Did the Trial Court err in determining that the corporate veil should be pierced?"

The allegations of plaintiff's amended complaint with reference to the liability of Jerry Teal and Cellux Converters, Inc., are as follows:

... 2. Tennessee Tape, Inc. ("Tennessee Tape") is a Tennessee corporation with its principal place of business in Davidson County, Tennessee.

3. Cellux Converters, Inc. ("Cellux") is a Tennessee corporation with its principal place of business at 470 Craighead Street, Nashville, Tennessee.

4. Jerry Teal is a citizen and resident of Davidson County, Tennessee.

5. In 1991 and 1992, the plaintiff contracted to sell goods to Tennessee Tape on account.

6. The goods were shipped to Tennessee Tape, and the invoices for the goods sold totaled $125,877.24.

7. On March 15, 1993, Tennessee Tape paid $1,000.00 of the amount owing. No other amounts have been paid.

### Count I

8. Tennessee Tape is in breach of the contract into which it entered with the plaintiff for failing to pay $124,877.24.

### Count II

9. Cellux and Mr. Teal, as sole shareholder of both corporations, exercised such dominion and control over Tennessee Tape that Tennessee Tape had no existence of its own.

10. The factors evidencing that control and dominion include, but are not limited to the following: Mr. Teal directed Tennessee Tape to award a rebate to Cellux of $400,000, to loan money to Cellux that was not repaid and to guarantee loans for Cellux.

11. The control that Cellux and Mr. Teal exercised over Tennessee Tape was used to commit dishonest and unjust acts in contravention of the plaintiff's rights.

12. The control exercised by Cellux and Mr. Teal over Tennessee Tape has combined with the unjust acts to be the proximate cause of injuries to the plaintiff. Tennessee Tape, therefore, is the alter ego of Cellux and Jerry Teal.

13. Because Tennessee Tape is the alter ego of Cellux and Mr. Teal, the corporate veil should be pierced and Cellux and Mr. Teal should be found liable for the amount Tennessee Tape owes the plaintiff under the contract.

*Count III*

14. The payment of $400,000 by Tennessee Tape to Cellux was a fraudulent conveyance, made without consideration and with an intent to defraud the creditors of Tennessee Tape in violation of T.C.A. § 66–3–101.

The joint answer of defendants admitted paragraphs 2, 3 and 4, 5, 6, and 7, but denied paragraphs 8, 9, 10, 11, 12, 13 and 14 of the amended complaint.

■ Conditions under which the corporate entity will be disregarded vary according to the circumstances present in the case, and the matter is particularly within the province of the Trial Court. *Electric Power Board of Chattanooga v. St. Joseph Valley Structural Steel Corp.,* Tenn.1985, 691 S.W.2d 522.

■ The separate identity of a corporation may be disregarded upon a showing that it is a sham, or dummy or where necessary to accomplish justice. The principle of piercing the corporate veil is to be applied with great caution and not precipitately, since there is a presumption of corporate regularity. Each case involving disregard of the corporate entity must rest upon its special facts. Generally no one factor is conclusive. *Schlater v. Haynie,* Tenn.App.1991, 833 S.W.2d 919.

■ Corporate veils are pierced—that is— the legal entity is disregarded and the true owners of the entity are held liable when the corporation is liable for a debt but is without funds due to some misconduct on the part of the officers and directors. *Anderson v. Durbin,* Tenn.App.1987, 740 S.W.2d 417.

■ If separate corporations are designed or used as a means of defrauding creditors, their acts should be carefully scrutinized. *Thach v. Brown Knitting Co.,* 23 Tenn.App. 317, 132 S.W.2d 228 (1939).

■ In an appropriate case and in furtherance of the ends of justice, a corporation and the individual or individuals owning all of its stock will be treated as identical. *E.O. Bailey & Co. v. Union Planters Title Guaranty Co.,* 33 Tenn.App. 439, 232 S.W.2d 309 (1950).

■ By suitable evidence, it may be established that separate corporations should be treated as a single entity. *Neese v. Fireman's Fund Ins. Co.,* 53 Tenn.App. 710, 386 S.W.2d 918 (1964).

■ Where two corporations are both insolvent, it is often necessary to preserve their separate entities in order to do justice to their respective creditors. *Tenn. Consol. Coal Co. v. Home Ice & Coal Co.,* 25 Tenn. App. 316, 156 S.W.2d 454 (1942).

There is no showing that Cellux Converters, Inc. is insolvent. It is uncontroverted that Tennessee Tape, Inc. is without assets and has unpaid debts. It is also undisputed that, at all times material to this appeal, Jerry Teal was the sole owner of all of the stock of both corporations and exercised absolute and active control of their operations.

The judgment of the Trial Court recites:

... The only remaining two issues to be decided by this Court are: (1) whether plaintiff should be entitled to pierce the corporate veil and find Jerry Teal, individually, and Cellux Converters, Inc. (Cellux), liable for that obligation and (2) whether the Court should deem as void a $400,000 transaction between Tenn. Tape and Cellux as well as a transfer of Cellux shares to Mr. Teal.

Cellux and Tenn. Tape had a common sole director (Jerry Teal), a common officer (Jerry Teal), and a common shareholder (Jerry Teal) when it began a business relationship with Muroll whereby Muroll shipped product to Tenn. Tape, who then sold the product to Cellux, who customized the product and sold it back to Tenn. Tape who then distributed the product.

In 1993, Mr. Teal, the sole shareholder and director of both corporations (Tenn. Tape and Cellux), single-handedly directed, after the filing of this lawsuit, that Tenn. Tape provide a $400,000 "rebate" to Cellux, which in effect served to deprive Tenn. Tape of $400,000 worth of assets and rendered it unable to pay its creditors, one of whom is plaintiff, Muroll, due to the stipulated fact that during 1990 and 1992, Tenn. Tape imported from Muroll certain PVC tape on account totaling $125,877.24

for which Tenn. Tape only paid $1,000.00 on March 15, 1993. Further, in July of 1992, Tenn. Tape transferred its 50% interest in Cellux to Mr. Teal for little or no consideration.

Plaintiff alleges that Mr. Teal exercised such dominion and control over Cellux and Tenn. Tape that the corporations were his alter-ego and were used to defraud the creditors of Tenn. Tape. Defendants insist that the alleged fraudulent transactions were in the ordinary course of business and were not done in an attempt to defraud creditors of Tenn. Tape.

The Court finds that, based upon the evidence in the record, the corporations in question (Tenn. Tape and Cellux), were defendant Teal's alter-ego and were used to defraud the creditors of Tenn. Tape through fraudulent conveyances, transfers, and "rebates." Thus, the Court finds that the corporate veil, in this case, should be pierced, thereby allowing defendant Teal and Cellux to be held liable for the debts accrued and owing by Tenn. Tape to its creditor, plaintiff Muroll.

Appellants' argument takes issue with the factual findings of the Trial Court as follows:

Defendants submit the trial court's decision to apply the "alter ego" theory in this case is based on an erroneous construction of the facts, and is not supported by the record. Further, the proof does not sustain the finding that fraudulent conveyances were made between Tennessee Tape, Cellux, and Teal. Moreover, the trial court's finding that Tennessee Tape rebated $400,000.00 to Cellux after this lawsuit was filed is clearly error. This rebate was made when both corporations were solvent and able to pay their creditors in April of 1992. The trial court also found Teal paid little or no consideration for Tennessee Tape's 50% interest in Cellux, although Teal's testimony shows there was valuable consideration paid. Based on these erroneous findings, the trial court ruled the corporate veil should be pierced, and held Cellux and Teal liable for the debts of Tennessee Tape.

The only evidence in the record is the testimony of the defendant, Teal, and certain documents. The corporations were operated by separate personnel and they shared no space, stock of merchandise, or equipment. Each had its own supervisory personnel, all of whom were subject to the orders of Jerry Teal, the sole stockholder and director. Each corporation bought goods from the other.

Initially, Jerry Teal received a salary of "approximately $3,500 per month" from Tennessee Tape, Inc. and $2,000 per month from Cellux Converters, Inc.

In April, 1992, Jerry Teal caused Tennessee Tape to "make a 15% rebate" to Cellux Converters in the approximate amount of $400,000. Jerry Teal explained that this was to reimburse Cellux Converters for "unfair price concessions and discounts on purchases by Tennessee Tape from Cellux Converters." This rebate was evidenced by a "credit note" of $325,000 which was satisfied by delivery of merchandise as ordered by Cellux Converters without charge prior to March 2, 1993, when Tennessee Tape ceased to operate. This is the principal and determinative transaction between the corporations.

At some time after the execution of the "credit note," Jerry Teal ceased to draw any salary from Tennessee Tape and began drawing $5,000 per month salary from Cellux Converters, Inc.

This record is impressive—not from the facts revealed therein, but from the lack of facts revealed.

For example, the record contains not a single check, invoice or book entry regarding transactions between the two defendant corporations, nor a single operating statement, balance sheet or tax return. The nearest thing to any accounting report is an "earnings analysis" of Cellux Converters, Inc. 1990–1993, prepared in the form of a table and graphs by an accountant from income tax returns of the corporation. The table refers to a $400,000 "rebate" received from a "related corporation." Jerry Teal explained that "related" meant "family."

The testimony of Jerry Teal contains the following:

Q. Do you know how this $400,000 cash rebate was reflected on the financial statements of Cellux Converters?

A. No.

Q. What about the financial statements of Tennessee Tape? Do you know how that was reflected on the financial statements of Tennessee Tape?

A. No.

Q. Did Tennessee Tape ever have financial statements prepared?

A. Yes.

. . . .

Q. Mr. Teal, did Tennessee Tape and Cellux Converters have different checking accounts?

A. Yes.

Q. Did each of those two companies file their own separate tax returns?

A. Yes.

Q. Did each of those two companies have different accounting firms prepare those tax returns and/or whatever financial statements were done?

A. Yes.

. . . .

Q. ... In April of 1992, what was the financial condition of Tennessee Tape?

A. It was very good.

Q. A profitable company?

A. Yes.

Q. Was it paying its bills at that time?

A. Yes.

Q. Was it current with Muroll at that time?

A. Yes.

Q. Could it be considered insolvent in any way?

A. No.

Q. Now, that would have been in March of 1992; is that correct?

A. Yes.

Q. Now, I think you testified that Cellux Converters was not so profitable at that point in time; is that correct?

A. That's correct.

. . . .

Q. All right. But we'll get into that. Now, when did Tennessee Tape's fortunes, or economic fortunes, turn the other way?

A. Oh, about August of '92. We had the embezzlement by Ms. Brenda Hall who was convicted by Mr. Turner here in Nashville for about $30,000. And, simultaneously, about the same time those two were our largest accounts.

. . . .

Q. Okay. Now, with the loss of these two accounts in the fall of '92, what effect did that have on Tennessee Tape?

A. Well, it was disastrous to the cash flow. It represented about 70 percent of our problem base.

Q. Was there a lack of operating capital at that time?

A. Yes, just lack of cash flow.

Q. And when was the decision made to close Tennessee Tape?

A. Basically, March of '93.

. . . .

Q. And, Mr. Teal, again, let me—and I apologize. But at the time this credit rebate was given in April of 1992, what effect, if any, would it have had on the solvency of Tennessee Tape?

A. Not any.

Q. In fact, would it not have helped Tennessee Tape by reducing its tax liability?

A. That's correct.

Q. And when, in your opinion, would Tennessee Tape have become insolvent? When did it become insolvent?

A. Early '93, July or August, whatever.

Q. '93? All right. Excuse me. When would it become insolvent?

A. I'm sorry, late '92.

. . . .

Q. Mr. Teal, again, the $400,000 credit note, the rebate, was designed principally to help Tennessee Tape in subsequent sales with Cellux Converters with the exception of wiping out the antecedent debt; is that correct?

A. Yes. It was originally to help tax-wise.

Q. Right, tax-wise to help Cellux Converters?

A. That's right.

Q. Excuse me. Tax-wise to help Tennessee Tape?

A. It helped both.

The testimony of Jerry Teal shows unequivocally that he, as sole stockholder of Tennessee Tape, Inc., caused Tennessee Tape to transfer $325,000 in merchandise to Cellux Converters, Inc., his other solely owned corporation, with only a pretextual consideration, thereby rendering Tennessee Tape, Inc. unable to pay its debts and enabling Cellux Converters, Inc., to more than double his (Teal's) salary.

This dealing was clearly in fraud of the creditors of Tennessee Tape, Inc., and justified a piercing of the corporate veils to require both Teal and his other corporation to account to plaintiff for the fruits of the fraudulent conversion of assets.

The judgment of the Trial Court is affirmed. Costs of this appeal are taxed against appellants. The cause is remanded to the Trial Court for any further necessary proceedings.

Affirmed and Remanded.

LEWIS and CANTRELL, JJ., concur.