IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
June 11, 2013 Session

# H.G. HILL REALTY COMPANY, L.L.C. v. RE/MAX CARRIAGE HOUSE, INC., ET AL.

**Direct Appeal from the Chancery Court for Davidson County**
No. 110261IV     Russell T. Perkins, Chancellor

**No. M2012-01509-COA-R3-CV - Filed July 23, 2013**

This appeal arises from the denial of Appellant's Tennessee Rule of Civil Procedure 60.02 motion for relief from a default judgment. Appellee's original complaint was filed against the Appellant's company for breach of a commercial lease agreement. Appellee was granted leave to amend the complaint to add Appellant, individually, as a party-defendant. Appellant failed to file any responsive pleadings in the case and a default judgment was entered against him. Several months later, Appellant filed a Rule 60.02 motion to set aside the default judgment against him. We conclude that the trial court did not err in piercing the corporate veil to add Appellant as a defendant, or in the amount of damages awarded in the default judgment. Because Appellant failed to meet his burden of proof on the Rule 60.02 motion, we also conclude that the trial court did not err in denying the motion. Affirmed and remanded.

**Tenn. R. App. P. 3. Appeal as of Right; Judgment of the Chancery Court Affirmed and Remanded**

J. STEVEN STAFFORD, J., delivered the opinion of the Court, in which DAVID R. FARMER, J., and HOLLY M. KIRBY, J., joined.

Fred C. Dance, Franklin, Tennessee, for the appellant, Robert L. Wood, Jr.

Derek W. Edwards and Keith W. Randall, Nashville, Tennessee, for the appellee, H. G. Hill Realty Company, L.L.C.

## OPINION

On February 25, 2011, H. G. Hill Realty Company, L.L.C. ("H. G. Hill," or "Appellee") filed its original complaint in the Chancery Court of Davidson County. The

original complaint named Re/Max Carriage House, Inc. f/k/a Re/Max Elite-Carriage House, Inc. ("Re/Max") as the sole defendant, and sought possession of a premises leased by Re/Max. At paragraph seven, the original complaint states that Re/Max "presently owes $22,709.68 for rents past due and owing . . . which will be increased by $5,876.04 per month for every month that Tenant does not pay." In support of the original complaint, H. G. Hill attached, as exhibits, both the parties' lease agreement and an itemization of the rental amounts allegedly due. On March 7, 2011, Re/Max surrendered possession of the leased premises pursuant to an agreed order, which was signed and submitted by H. G. Hill's lawyer, with the permission of Re/Max's President, Robert L. Wood, Jr. ("Mr. Wood," or "Appellant"). On June 17, 2011, H. G. Hill filed an amended complaint, seeking money damages for past-due rent. The *ad damnum* clause of the amended complaint states:

> 7. At the time the original complaint was filed, Tenant owed $22,709.68 for rents past due. Because of Tenant's default, Landlord exercised its option under Paragraph 17 d of the Lease Agreement to declare that all current and future rent and other monetary obligations are immediately due and payable. The Lease Agreement was to end on June 30, 2013, and thus amount now due for rent is $206,396.48 . . . .

The certificate of service indicates that the amended complaint was mailed to Mr. Wood on June 15, 2011; he does not dispute receipt of the amended complaint.

There is no evidence in the record that H. G. Hill made any responsive pleadings to either the original, or amended complaint. Accordingly, on July 22, 2011, H. G. Hill filed a motion for default judgment against Re/Max for money damages, along with an affidavit and default judgment certificate in support thereof. The certificate of service indicates that the motion for default judgment, and supporting documents, were mailed to Mr. Wood on July 22, 2011; he does not dispute that he received notice of the motion for default judgment against Re/Max.

On August 3, 2011, H. G. Hill entered a motion for leave to file an amendment to its amended complaint in order to name Mr. Wood as a co-defendant. The certificate of service for the motion indicates that it was mailed to Mr. Wood on August 2, 2011; Mr. Wood does not dispute receipt of the motion for leave to file an amendment to the amended complaint. In support of its contention that Mr. Wood should be made a party-defendant to the lawsuit, H. G. Hill's proposed amendment to the amended complaint stated:

> 12. Mr. Wood is personally liable for the debt of Defendant ReMax because the corporation was grossly undercapitalized,

stock certificates were not issued (or there was impropriety in the issuance of them), the corporation was used as an instrumentality or business conduit for an individual or another corporation, corporate assets were diverted or manipulated, and Mr. Wood withheld payments that were earmarked for H. G. Hill, but diverted for his own personal benefit.

While H. G. Hill's motion for leave to file an amendment to its amended complaint was pending, on August 19, 2011, the trial court entered a final default judgment against Re/Max for money damages in the amount of $217,517.66. The certificate of service indicates that Mr. Wood received notice of the default judgment against Re/Max by mail on or about July 22, 2011. No appeal has been filed concerning the default judgment entered against Re/Max.

By order entered on August 31, 2011, the trial court granted H. G. Hill's motion for leave to file an amendment to its amended complaint; the certificate of service indicates that the order allowing the amendment was mailed to Mr. Wood on August 22, 2011. Mr. Wood made no response to the order allowing the amendment, and the amendment to the amended complaint was entered on August 31, 2011. The certificate of service indicates that the amendment to the amended complaint was mailed to Mr. Wood on August 22, 2011. He did not respond.

After Mr. Wood was made a party-defendant by entry of the amendment to the amended complaint, on November 4, 2011, H. G. Hill filed a motion for default judgment against Mr. Wood for money damages, along with an accompanying affidavit and default judgment certificate in support thereof. Again, the certificate of service indicates that the motion for default judgment was sent to Mr. Wood by mail on November 4, 2011. Mr. Wood did not respond to the motion for default judgment against him. Following a hearing on November 18, 2011, on November 28, 2011, the trial court entered a final default judgment against Mr. Wood for money damages, joint and several with Re/Max, in the amount of $218,817.21. The certificate of service indicates that the default judgment was mailed to Mr. Wood on November 18, 2011.

On March 19, 2012, H. G. Hill filed a motion for an order of sale of the realty at issue, seeking an order from the trial court to sell the realty owned by Mr. Wood to satisfy the judgment against him.

On April 9, 2012, Mr. Wood filed his first response in the trial court in opposition to the motion for sale of realty. On the same day, Mr. Wood filed a Tennessee Rule of Civil Procedure 60.02 motion to set aside the default judgment entered against him. As grounds

for the motion, Mr. Hill averred:

> (1) The *ad damnum* in the amendment to the amended complaint does not demand a judgment against the defendant Wood as required by [Tennessee Rule of Civil Procedure] 8.01 . . . .
>
> (2) Even taking the amendment to the amended complaint and the amended complaint together the "complaint" against defendant Wood is legally insufficient, fails to state a claim upon which relief can be granted, to subject Wood to individual liability for the corporate debt on any legal theory including that of piercing the corporate veil.
>
> (3) Even taking the Amended Complaint and the Amendment to the Amended Complaint together the *ad damnum* for damages is limited to $22,709.68. Thus the judgment of $218,817.21 is greatly in excess of the amount prayed for in the Complaint and renders the judgment void.

A hearing on Mr. Wood's motion to set aside the default judgment was held on May 11, 2012. By order of June 11, 2012, the trial court denied Mr. Wood's motion. Specifically, the trial court held that:

> It is further Ordered, Adjudged, and Decreed that Mr. Wood has not met his burden to show that the default was not willful–a requirement for relief under Rule 60.02(1).
>
> It is further Ordered, Adjudged, and Decreed that Mr. Wood has not met his burden to show that (i) the Court lacked subject-matter jurisdiction; (ii) the Court lacked personal jurisdiction over him; or (iii) the Court acted inconsistent with due process of law. Accordingly, Mr. Wood has not met his burden to show that the Default Judgment is void–a requirement for relief under Rule 60.02(3).

Thereafter, on June 21, 2012, Mr. Wood filed a Tennessee Rule of Civil Procedure 59.01 motion to alter or amend the June 11, 2012 order. The trial court treated the Rule 59.01 motion as a second Rule 60.02(3) motion, and denied it by order of July 13, 2012. No appeal is taken as to the July 13, 2012 order; Mr. Wood appeals only the June 11, 2012 order, denying him Rule 60.02 relief from the default judgment.

Mr. Wood raises three issues for review as stated in his brief:

> 1. Did the trial court err in failing to set aside the default judgment against [Mr. Wood], because the judgment is void because the judgment exceeds the scope of the pleadings filed by [Re/Max].
>
> 2. Did the trial court err in failing to set aside the default judgment against [Mr. Wood], because the *ad damnum* clause in the complaint did not demand a judgment for a specific dollar amount against [Mr. Wood].
>
> 3. Did the trial court err in failing to set aside the default judgment against [Mr. Wood], because [Re/Max] failed to mitigate its damages.

After review of the appellate record, we perceive that there are two dispositive issues in this case:

> 1. Whether the trial court erred in entering a default judgment against Mr. Wood by piercing the corporate veil.
>
> 2. If the corporate veil was properly pierced, whether the trial court erred in denying Mr. Wood's motion to set aside the judgment pursuant to Tennessee Rule of Civil Procedure 60.02.

## **Default Judgment**

Here, Mr. Wood appeals the trial court's denial of his motion to set aside the default judgment that was entered against him. The propriety of a trial court's denial of a request to set aside a default judgment depends in part on whether the default judgment was properly entered in the first place. ***Yearwood, Johnson, Stanton & Crabtree, Inc. v. Foxland Dev. Venture***, 828 S.W.2d 412, 413 (Tenn. Ct. App. 1991). Accordingly, we first address whether default judgment was properly entered against Mr. Wood in this case.

Tennessee Rule of Civil Procedure 55.01 governs the entry of default judgments in the trial court. The rule provides:

> When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend as

provided by these rules and that fact is made to appear by affidavit or otherwise, judgment by default may be entered as follows:

The party entitled to a judgment by default shall apply to the court. Except for cases where service was properly made by publication, all parties against whom a default judgment is sought shall be served with a written notice of the application at least five days before the hearing on the application, regardless of whether the party has made an appearance in the action. A party served by publication is entitled to such notice only if that party has made an appearance in the action. No judgment by default shall be entered against an infant or incompetent person unless represented in the action by a general guardian, committee, conservator, or other such representative who has appeared therein. If, in order to enable the court to enter judgment or to carry it into effect, it is necessary to take an account or to determine the amount of damages or to establish the truth of any averment by evidence or to make an investigation of any other matter the court may conduct such hearings or order such references as it deems necessary and proper and shall accord a right of trial by jury to the parties when and as required by any statute.

As discussed in Lawrence A. Pivnick, Tennessee Circuit Court Practice, § 27.2 (2012):

Judgment by default (previously called judgment *pro confesso*) is an expediting procedure which acts as a deterrent to defending parties resorting to delay as an element of their litigation strategy. Generally, a default judgment is sought by a party seeking "affirmative relief" when his adversary fails to properly and timely respond to an initial pleading . . . .

Generally, the entry of a default judgment has the effect of an answer admitting the well-pleaded material allegations of fact contained in the adversary's pleading and fair inferences therefrom. . . .

In addition to creating admissions as to factual statements

in prior unanswered pleadings, the default judgment has a second important purpose: "to record that time for pleadings has past; that one party has failed to plead; but that the case may proceed to trial without waiting for delinquent parties."

*Id*. (footnotes omitted).  As explained by this Court:

A judgment by default is a final order disposing of a case on its merits, like any other judgment. A judgment by default is generally considered an admission of all the properly pleaded material allegations of fact in the complaint, except the amount of unliquidated damages.[1] *See* ***Patterson*** [***v. Rockwell Int'l***], 665 S.W.2d [96,] 101 [(Tenn. 1984)].

The essence of a default judgment is that a nonmovant fails to take a step required by a rule of practice or of the court. A default judgment contemplates a lack of responsiveness by defendant such that plaintiff is entitled to judgment as a matter of policy; defendants are not to be allowed to prolong litigation by imposing procedural delays. The default judgment protects a diligent party from continual delay and uncertainty as to his or her rights.

---

[1] The damages in this case are liquidated. As noted in  Bryan Garner, A Dictionary of Modern Legal Usage 530 (2nd ed.1995), the term "liquidated damages applies when the parties to a contract have agreed in advance on the measure of damages to be assessed in the event of default."  Liquidated damages are distinguishable from forfeiture or penalty type damages, "which involve[] a provision imposed as a threat of punishment rather than as a genuine estimate of damages upon default." *Id*.; *see further* Robert E. Burch, *Trial Handbook for Tennessee Lawyers* § 33:17 (May 2013) ("If the parties agree by contract what the damages for the breach of their contract shall be, the damages are said to be liquidated and, unless the amount is unreasonable or unless the agreement violates some principle of law, the parties are bound thereby.") (footnote omitted).  Here, and as discussed *infra*, the amended complaint's *ad damnum* states that the "amount now due for rent is $206,396.48."  In addition to the rent, in the prayer for relief section of the amended complaint, H. G. Hill asks for "other damages allowed under the Lease," "consequential damages," "attorney fees, court costs, and expenses."  Therefore, under the plain language of the contract, the parties agreed to the measure of damages to be assessed in the event of a default, i.e., acceleration of rent, attorney fees, court costs, expenses, and other consequential damages arising from the breach. Accordingly, we can only conclude that the damages sought, and awarded, in this case were liquidated and were not penal.

49 C.J.S. Judgments § 196 (1997).

*State ex rel. Jones v. Looper*, 86 S.W.3d 189, 194 (Tenn. Ct. App. 2000); *see also* **Clark v. Sputniks**, LLC, 368 S.W.3d 431, 435 (Tenn. 2012 ) ("By allowing default judgments to be entered against them, the defendants impliedly admitted as true all the material factual allegations contained in the complaints, except the amount of the plaintiffs' unliquidated damages."). In order to aver factual allegations sufficient to sustain default judgment, the complaint "'need not contain detailed allegations of all the facts giving rise to the claim,' but it 'must contain sufficient factual allegations to articulate a claim for relief.'" *Plunk v. Gibson Guitar Corp.*, No. M2012-00882-COA-R3-CV, 2013 WL 2420539, at \*3 n.3 (Tenn. Ct. App. May 31, 2013) (affirming the trial court's holding that the factual allegations of the complaint were sufficient to sustain the default judgment). "While a complaint . . . need not contain in minute detail the facts that give rise to the claim, it must contain direct allegations on every material point necessary to sustain a recovery on any legal theory, even though it may not be the theory suggested . . . by the pleader, or contain allegations from which an inference may fairly be drawn that evidence on these material points will be introduced at trial." *Webb v. Nashville Area Habitat for Humanity, Inc.*, 346 S.W.3d 422, 427 (Tenn. 2011) (quoting  Leach v. Taylor, 124 S.W.3d 87, 92 (Tenn. 2004)).

However, "[p]laintiffs cannot extend the default judgment to matters outside the issues raised in the pleadings."  **Clark**, 368 S.W.3d at 439 (citing Tenn. R. Civ. P. 54.03) ("A judgment by default shall not be different in kind from or exceed in amount that prayed for in the demand for judgment."). In addition, a default judgment judgement does not admit any conclusion of law contained in a complaint. *See* **Brashears v. Hartsook**, 450 S.W.2d 7, 9 (Tenn. 1969) (noting that a default judgment "is in no way an admission of legal conclusions or matters of law"); *but see* **Webb**, 346 S.W.3d at 433–34 ("In many instances, however, the distinction between whether an allegation is a  "fact" or a "conclusion" is fine, blurry, and hard to detect.") (confirming "the observation of Professors Banks and Entman that the fact/conclusion dichotomy has rarely been invoked in Tennessee.") (citing Robert Banks, Jr. & June F. Entman, Tennessee Civil Procedure § 5–4(c) (3d ed. 2009)). Thus, we turn to consider the cause of action asserted against Mr. Wood and the factual allegations in H. G. Hill's complaint to support that cause of action.

Here, it is undisputed that the lease agreement, upon which the lawsuit was instigated, was entered by and between H. G. Hill and Re/Max; consequently, Mr. Wood was not a party to the lease.  Accordingly, the sole basis for entry of a default judgment against Mr. Wood, holding him jointly and severally liable for breach of the subject lease, is through the mechanism of piercing the corporate veil.

This Court explained the doctrine of piercing the corporate veil in the recent case of

*Edmunds v. Delta Partners, L.L.C*, No. M2012-00047-COA-R3-CV, 2012 WL 6604580 (Tenn. Ct. App. Dec. 18, 2012) (perm app. denied May 9, 2013):

> Conditions under which the corporate entity will be disregarded vary according to the circumstances present in the case, and the matter is particularly within the province of the trial court*. Muroll Gesellschaft M.B.H. v. Tennessee Tape, Inc*., 908 S.W.2d 211, 213 (Tenn. Ct. App. 1995) (citing *Electric Power Bd. of Chattanooga v. St. Joseph Valley Structural Steel Corp*., 691 S.W.2d 522 (Tenn. 1985)); *Piper v. Andrews*, No. 01A01-9612-CV-00570, 1997 WL 772127, at *3 (Tenn. Ct. App. Dec. 17, 1997) (Perm. app. denied June 8, 1998). Thus, the question of when an individual should be held liable for corporate obligations is largely a factual one. "Each case involving disregard of the corporate entity must rest upon its special facts." *Muroll Gesellschaft*, 908 S.W.2d at 213; *Schlater v. Haynie*, 833 S.W.2d 919, 925 (Tenn. Ct. App. 1991).
>
> * * *
>
> There is a presumption that a corporation is a distinct legal entity, wholly separate and apart from its shareholders, officers, directors, or affiliated corporations. In an appropriate case and in furtherance of the ends of justice, the separate identity of a corporation may be discarded and the individual or individuals owning all its stock and assets will be treated as identical to the corporation. *Muroll Gesellschaft*, 908 S.W.2d at 213; *Schlater*, 833 S.W.2d at 925; *see also* **Fidelity Trust Co. v. Service Laundry Co.**, 160 Tenn. 57, 61, 22 S.W.2d 6, 7–8 (1929); *see generally* **E.O Bailey & Co. v. Union Planters Title Guar. Co.**, 33 Tenn. App. 439, 232 S.W.2d 309 (1950). Discarding the fiction of the corporate entity, or piercing the corporate veil, is appropriate when the corporation is liable for a debt but is without funds to pay the debt, and the lack of funds is due to some misconduct on the part of the officers and directors. *Muroll Gesellschaft*, 908 S.W.2d at 213; *S.E.A., Inc. v. Southside Leasing Co., et al.*, No. E2000-00631-COA-R3-CV, 2000 WL 1449852, at *9 (Tenn. Ct. App. Sept. 29, 2000) (no Tenn. R. App. P. 11 filed); *Emergicare Consultants, Inc. v. Woolbright*, No. W1998-00659-COA-R3-CV, 2000 WL

1897350, at *2 (Tenn. Ct. App. Dec.29, 2000) (Perm. app. denied. May 14, 2001).

In those circumstances, courts may pierce the corporate veil to find the "true owners of the entity" liable, *Murroll Gesellschaft*, 908 S.W.2d at 213, or "to impose liability against a controlling shareholder who has used the corporate entity to avoid his legal obligations." *Manufacturers Consolidation Serv., Inc. v. Rodell*, 42 S.W.3d 846, 866 (Tenn. Ct. App. 2000). Our courts will disregard the corporation as a separate entity upon a showing that the corporation is a sham or dummy or such action is necessary to accomplish justice. *Muroll Gesellschaft*, 908 S.W.2d at 213; *Tennessee Racquetball Investors, Ltd. v. Bell*, 709 S.W.2d 617, 619 (Tenn. Ct. App. 1986); *Oak Ridge Auto Repair Serv. v. City Fin. Co.*, 57 Tenn.App. 707, 711, 425 S.W.2d 620, 622 (1967); *Fidelity Trust Co.*, 160 Tenn. at 61, 22 S.W.2d at 7–8; *Emergicare Consultants, Inc.*, 2000 WL 1897350, at *2; *Piper*, 1997 WL 772127, at *3.

*Edmunds v. Delta Partners, L.L.C*, 2012 WL 6604580, at *10–*11(citing *VP Buildings, Inc. v. Polygon Group*, No. M2001-00613-COA-R3-CV, 2002 WL 15634, *4–5 (Tenn. Ct. App. Jan. 8, 2002)); *see also* *Boles v. National Development Co., Inc.*, 175 S.W.3d 226, 244–45 (Tenn. Ct. App. 2005) (citing favorably the analysis and discussion in *VP Buildings*).

However, courts in Tennessee are cautioned that the doctrine of piercing the corporate veil should be applied only in "extreme circumstances to prevent the use of a corporate entity to defraud or perform illegal acts." *Pamperin v. Streamline Mfg., Inc.*, 276 S.W.3d 428, 437 (Tenn. Ct. App. 2008) (perm. app. denied Oct. 6, 2008). As this Court explained:

The principle of piercing the fiction of the corporate veil is to be applied with great caution and not precipitately, since there is a presumption of corporate regularity." *Schlater*, 833 S.W.2d at 925; *Emergicare Consultants, Inc.*, 2000 WL 1897350, at *2; *Lindsey, Bradley & Maloy v. Media Marketing Systems, Inc.*, No E200-00678-COA-R3-CV, 2000 WL 1875882, at *4 (Tenn. Ct. App. Dec.15, 2000) (no Tenn. R. App. P. 11 filed). The party wishing to negate the existence of such separate entity has the burden of proving facts sufficient to justify piercing the corporate veil. *Schlater*, 833 S.W.2d at 925.

***VP Buildings***, 2002 WL 15634, at *5.

The most common factors used by Tennessee courts to determine whether to pierce the corporate veil were originally set forth in ***Federal Deposit Ins. Corp. v. Allen***, 584 F. Supp. 386 (E.D. Tenn. 1984), as follows:

> Factors to be considered in determining whether to disregard the corporate veil include not only whether the entity has been used to work a fraud or injustice in contravention of public policy, but also: (1) whether there was a failure to collect paid in capital; (2) whether the corporation was grossly undercapitalized; (3) the nonissuance of stock certificates; (4) the sole ownership of stock by one individual; (5) the use of the same office or business location; (6) the employment of the same employees or attorneys; (7) the use of the corporation as an instrumentality or business conduit for an individual or another corporation; (8) the diversion of corporate assets by or to a stockholder or other entity to the detriment of creditors, or the manipulation of assets and liabilities in another; (9) the use of the corporation as a subterfuge in illegal transactions; (10) the formation and use of the corporation to transfer to it the existing liability of another person or entity; and (11) the failure to maintain arms length relationships among related entities.

*Id.* at 397 (citing cases from various jurisdictions); *see also* ***Marshall v. Jackson***, No. M2007-01764-COA-R3-CV, 2008 WL 5156312, *6 (Tenn. Ct. App. Dec. 08, 2008) (citing the above factors and noting that they are commonly referred to as the ***Allen*** factors); ***AmPharm, Inc. v. Eastland Pharmacy Services, L.L.C.***, No. M2006–01334–COA–R3–CV, 2008 WL 4830803, *6 (Tenn. Ct. App. Nov 5, 2008) (citing the ***Allen*** factors); ***Altice v. NATS, Inc.***, No. M2007-00212-COA-R3-CV, 2008 WL 1744571, *2 (Tenn. Ct. App. Apr.15, 2008) (same); ***Dolle v. Fisher***, No. E2003-02356-COA-R3-CV, 2005 WL 2051288, *4 (Tenn. Ct. App. Aug. 26, 2005) (same); ***Boles v. National Development Co., Inc.***, 175 S.W.3d 226, 245 (Tenn. Ct. App. 2005); ***Oceanics Schools, Inc. v. Barbour***, 112 S.W.3d 135, 140 (Tenn. Ct. App. 2003) (same); ***Emergicare Consultants, Inc. v. Woolbright***, No. W1998-00659-COA-R3-CV, 2000 WL 1897350, *2 (Tenn. Ct. App. Dec.29, 2000) (same). Generally, no one factor is conclusive in determining whether to pierce the corporate veil; rather, courts will rely upon a combination of factors in deciding the issue. ***Pamperin***, 276 S.W.3d at 438 (citing ***Oceanics Schools***, 112 S.W.3d at 140). "Even though corporate formalities have been observed, one may still challenge the corporate entity by showing that he has been the victim of some basically unfair device by which the corporate form of

business organization has been used to achieve an inequitable result." ***Pamperin***, 276 S.W.3d at 438 (quoting ***Schlater v. Haynie***, 833 S.W.2d 919, 925 (Tenn. Ct. App. 1991)).

As noted by Professor Pivnick, *supra*, "the entry of a default judgment has the effect of an answer admitting the well-pleaded material allegations of fact contained in the adversary's pleading and fair inferences therefrom . . . ." Accordingly, the question in this case is whether the pleadings (specifically, the amended complaint and the amendment thereto, *see* discussion *infra*) aver facts sufficient to form a basis to pierce the corporate veil so as to hold Mr. Wood jointly and severally liable, with Re/Max, for the judgment in this case. As set out in full context above, the amendment to the amended complaint states that Mr. Wood is personally liable for the debt of Re/Max because: (1) Re/Max was grossly undercapitalized; (2) stock certificates were not issued (or there was impropriety in the issuance); (3) the corporation was used as an instrumentality or business conduit for an individual or another corporation; (4) corporate assets were diverted or manipulated; and (5) Mr. Wood withheld payments that were earmarked for H. G. Hill, but were diverted for his own personal benefit.

Mr. Wood's failure to answer these allegations led to a default judgment being entered against him, and amounted to an admission that the allegations in the pleadings are true. Therefore, taking the foregoing allegations as true, we conclude that the pleadings aver facts sufficient to pierce the corporate veil in this case.

Even though the trial court's piercing of the corporate veil was not erroneous under the facts stated in the pleadings, the availability of default judgment is limited by several other exceptions, including:

> [N]o default judgment may be rendered granting relief that is different in kind or that exceeds the amount prayed for in the demand for judgment in the plaintiff's complaint. . . .

Lawrence A. Pivnick, Tennessee Circuit Court Practice, § 27.2 (2012).

In his appellate brief, Mr. Wood argues that "the *ad damnum* in the amendment to the amended complaint does not demand a judgment against [Mr. Wood] individually as required by [Tennessee Rule of Civil Procedure] 8.01."[2] By way of edification, an "amended"

---

[2] Tennessee Rule of Civil Procedure 8.01 provides;

> A pleading which sets forth a claim for relief, whether an original claim,

(continued...)

complaint and an "amendment to" a complaint are two different things. An "amended complaint" is complete in itself without adoption or reference to the original; as such, it supersedes and destroys the original complaint as a pleading. *McBurney v. Aldrich*, 816 S.W.2d 30 (Tenn. Ct. App.1991). An "amendment to" a complaint merely modifies the existing complaint, which remains before the trial court as modified. *Id*.

As set out above, the original complaint, filed on February 25, 2011 contained an *ad damnum* clause, which stated that Re/Max "presently owes $22,709.68 for rents past due and owing . . . which will be increased by $5,876.04 per month for every month that Tenant does not pay." In his brief, Mr. Wood argues that the original *ad damnum* amount of $22,709.68 is the most H. G. Hill may recover in this case. However, Mr. Wood's argument overlooks the fact that H. G. Hill filed an **amended** complaint on August 3, 2011. Based upon the foregoing authority, the amended complaint superseded the original complaint. Accordingly, the *ad damnum* in the original complaint was replaced by the *ad damnum* in the amended complaint, which states, in relevant part, that the "amount now due for rent is $206,396.48." In addition to the rent, in the prayer for relief section of the amended complaint, H. G. Hill asks for "other damages allowed under the Lease," "consequential damages," "attorney fees, court costs, and expenses." H. G. Hill then filed an **amendment to** the amended complaint on August 31, 2011. As noted above, this "amendment to" the amended complaint merely modified the amended complaint, but did not supersede it. The amendment to the amended complaint seeks only to add Mr. Wood as a party-defendant, and to hold him jointly and severally liable, with Re/Max, for any damages. It does not modify the *ad damnum* clause contained in the amended complaint. Accordingly, having determined above that the trial court did not err in piercing the corporate veil so as to join Mr. Wood in the lawsuit as a defendant, so long as Mr. Wood is not entitled to Tennessee Rule of Civil Procedure 60 relief from the default judgment entered against him (*see* discussion *infra*), he may be held jointly and severally liable for the *ad damnum* amount set out in the amended complaint, which asks not only for rent amounts, but also for attorney fees and incidental damages incurred by Re/Max in collecting the debt.

Finally, as is relevant to this appeal, "a default judgment cannot be entered unless the court file shows service of process on the defaulting party." Lawrence A. Pivnick, Tennessee Circuit Court Practice, § 27.2 (2012). As discussed above, the certificates of service indicate that Mr. Wood received the amended complaint, the amendment to the amended complaint,

---

[2](...continued)
> counterclaim, cross-claim, or third-party claim, shall contain: (1) a short and plain statement of the claim showing that the pleader is entitled to relief; and (2) a demand for judgment for the relief the pleader seeks. Relief in the alternative or of several different types may be demanded.

all relevant motions, notice of all scheduled hearings, and all orders entered by the trial court. In fact, Mr. Wood never disputed, either at the trial level, or on appeal, that he received all relevant filings made in this case.[3]

For the foregoing reasons, we conclude that the trial court did not err in entering a default judgment against Mr. Wood. The amended complaint and amendment thereto set forth sufficient facts to pierce the corporate veil. Furthermore, the amount of the judgment against Mr. Wood, i.e., $218,817.21, was set forth in the default judgment certificate filed in conjunction with H. G. Hill's motion for default judgment against Mr. Wood. As discussed above, the amount of the judgment is also supported by the *ad damnum* clause contained in the amended complaint, which prays not only for past due rent, but also for other related fees and expenses. Finally, there is no evidence that Mr. Wood did not receive sufficient notice of the filings made in the case.

Having determined that default judgment was properly entered against Mr. Wood, and in an amount that is supported by the pleadings, we now turn to address whether Mr. Wood is entitled to relief from the default judgment under Tennessee Rule of Civil Procedure 60.02.

**Tennessee Rule of Civil Procedure 60.02 Relief**

Tennessee Rule of Civil Procedure 55.02 provides that, "for good cause shown the court may set aside a judgment by default in accordance with [Tennessee Rule of Civil Procedure] 60.02." As set out in full context above, the trial court states that Mr. Wood is not entitled to relief under Rule 60.02(1), or 60.02(3). Tennessee Rule of Civil Procedure 60.02 provides, in relevant part:

> On motion and upon such terms as are just, the court may relieve a party or the party's legal representative from a final judgment, order or proceeding for the following reasons: (1) mistake, inadvertence, surprise or excusable neglect. . .(3) the judgment is void. . .(5) any other reason justifying relief from the operation of the judgment. The motion shall be made within a reasonable time, and for reasons (1) and (2) not more than one year after the judgment, order or proceeding was entered or

---

[3] We are cognizant of the fact that mailing a copy of a complaint utilizing a certificate of service is not a substitute for proper service of process pursuant to Rules 4.01 through 4.04 of the Tennessee Rules of Civil Procedure. However, Mr. Wood did not raise the defense of insufficiency of service of process, either in the trial court, or on appeal. Therefore, this issue is waived. *See Faulks v. Crowder*, 99 S.W.3d 116, 125 (Tenn. Ct. App. 2003) ("The failure . . . to challenge insufficiency of process in accordance with Rule 8.03, Tenn. R. Civ. P. constitutes a waiver of the matter . . . .").

taken. . . .

The Tennessee Supreme Court recently explained the standard of review regarding the denial of a motion pursuant to Rule 60.02:

> We ... review for abuse of discretion a trial court's ruling on a Rule 60.02 motion for relief from a final judgment[.] *Henry v. Goins*, 104 S.W.3d 475, 479 (Tenn. 2003). Abuse of discretion is found "'only when the trial court applied incorrect legal standards, reached an illogical conclusion, based its decision on a clearly erroneous assessment of the evidence, or employed reasoning that causes an injustice to the complaining party.'" *State v. Jordan*, 325 S.W.3d 1, 39 (Tenn. 2010) (quoting *State v. Banks*, 271 S.W.3d 90, 116 (Tenn. 2008)). The abuse of discretion standard does not permit an appellate court to merely substitute its judgment for that of the trial court. *See Eldridge v. Eldridge*, 42 S.W.3d 82, 85 (Tenn. 2001); *Henry*, 104 S.W.3d at 479. Instead, "[u]nder the abuse of discretion standard, a trial court's ruling 'will be upheld so long as reasonable minds can disagree as to [the] propriety of the decision made.'" *Eldridge*, 42 S.W.3d at 85 (quoting *State v. Scott*, 33 S.W.3d 746, 752 (Tenn.2000)).

*Discover Bank v. Morgan*, 363 S.W.3d 479, 487 (Tenn. 2012).

Despite this strict standard of review, Rule 60.02 motions should be viewed liberally when the movant seeks relief from a default judgment. *Pryor v. Rivergate Meadows Apartment Assocs. Ltd. P'ship*, 338 S.W.3d 882, 885 (Tenn. Ct. App. 2009) (citing *Tenn. Dep't of Human Servs. v. Barbee*, 689 S.W.2d 863, 866 (Tenn.1985)). Therefore, "the court should grant the application whenever there is reasonable doubt as to whether the default judgment should be set aside." *Rivergate Meadows*, 338 S.W.3d at 885 (citing *Tenn. State Bank v. Lay*, 609 S.W.2d 525, 527 (Tenn. Ct. App. 1980)).

This Court discussed the burden on the party seeking relief from a default judgment due to "mistake, inadvertence, surprise or excusable neglect," i.e., Tennessee Rule of Civil Procedure 60.02(1), in *Pryor v. Rivergate Meadows Apartment Assocs. Ltd. P'ship*, 338 S.W.3d 882 (Tenn. Ct. App. 2009):

> The party seeking relief under Rule 60.02(1) has the burden to "offer proof of the basis on which relief is sought."

*Henry v. Goins*, 104 S.W.3d 475, 482 (Tenn. 2003). To meet this burden, the movant must "set forth in a motion or petition and supporting affidavits facts explaining why the movant was justified in failing to avoid the mistake, inadvertence, surprise or neglect." *Lay*, 609 S.W.2d at 527. Three factors must be considered when determining if a default judgment should be vacated under Rule 60.02(1): "(1) whether the default was willful; (2) whether the defendant has a meritorious defense; and (3) whether the non-defaulting party would be prejudiced if relief were granted." *Henry v. Goins*, 104 S.W.3d 475, 481 (Tenn.2003) (citing *Tenn. Dep't of Human Servs. v. Barbee*, 689 S.W.2d 863, 866 (Tenn. 1985)). Again, the trial court "is in the best position to assess the various factors that should be considered in determining whether a default judgment should be vacated." *Barbee*, 689 S.W.2d at 867.

These factors—willfulness, meritorious defense, and prejudice—have not replaced the Rule 60.02(1) reasons of mistake, inadvertence, surprise or excusable neglect. *Bowers v. Gutterguard of Tenn., Inc.*, No. M2002-02877-COA-R3-CV, 2003 WL 22994302, at *7 (Tenn. Ct. App. Dec. 17, 2003). Specifically, Tennessee courts have wrestled with the apparent incompatibility of "excusable neglect" and "willfulness." A recent Tennessee decision explained the relationship as follows: "[t]his approach has been to find that negligence, a form of neglect, may be excusable and to employ wilfulness as a critical factor in distinguishing neglect that is excusable from that which is not." *World Relief Corp. of Nat'l Ass'n of Evangelicals v. Messay*, No. M2005-01533-COA-R3-CV, 2007 WL 2198199, at *7 n. 9 (Tenn. Ct. App. July 26, 2007).

*Rivergate Meadows*, 338 S.W.3d at 886. Accordingly, in determining whether Mr. Wood is entitled to relief under Tennessee Rule of Civil Procedure 60.02(1), this Court must consider whether Mr. Wood's inaction was willful, whether he has set forth a meritorious defense, and whether H. G. Hill would be prejudiced if the relief were granted.

We have reviewed Mr. Wood's motion for relief from the default judgment as well as his affidavit in support thereof. Therein, Mr. Wood provides no explanation whatsoever concerning why he failed to respond to the pleadings in this case. Specifically, there is no indication in the record that Mr. Wood's failure to respond was the result of some excusable

neglect. From the record, and as discussed above, Mr. Wood does not dispute the certificates of service, which indicate that all relevant filings were mailed to him. Accordingly, there is no basis from which to conclude that Mr. Wood's failure to answer in this case was anything but willful. Mr. Wood has the burden to show that his failure to answer was not willful; he has failed to meet this burden.

Mr. Wood does assert, however, that he has put forth three meritorious defenses that justify setting aside the default judgment: (1) that the judgment exceeds the *ad damnum*; (2) the pleadings fail to aver facts sufficient to pierce the corporate veil; and (3) H.G. Hill failed to mitigate its damages. We have previously discussed the first two arguments above and conclude that the record does not support a conclusion that the default judgment is void based upon either of these arguments.[4] With regard to H.G. Hill's failure to mitigate its damages, regardless of whether Mr. Wood has set forth a meritorious defense to the underlying action, this Court will not set aside a default judgment when the defendant's action in failing to appear was willful. ***See Discover Bank v. Morgan***, 363 S.W.3d 479, 493–94 (Tenn. 2012) ("If the court finds that the defaulting party has acted willfully, the judgment cannot be set aside on "excusable neglect" grounds, and the court need not consider the other factors. If the conduct was not willful, however, then the court must consider whether the defaulting party has a meritorious defense and whether the non-defaulting party would be prejudiced by the granting of relief."). Because we have determined that Mr. Wood's conduct was willful, we need not consider whether he has set forth a meritorious defense. Accordingly, although Mr. Wood may have a meritorious defense to the underlying action, the trial court did not err in denying Mr. Wood's motion to set aside the default.

For the foregoing reasons, we affirm the order of the trial court. The case is remanded for such further proceedings as may be necessary and are consistent with this Opinion. Costs of this appeal are assessed against the Appellant, Robert L. Wood, Jr., and his surety.

$$\text{_____}$$
J. STEVEN STAFFORD, JUDGE

---

[4] Although he raised the issues of subject-matter and personal jurisdiction in the trial court, on appeal, Mr. Wood has not pursued these grounds for his argument that the default judgment is void.