FILED
01/22/2025
Clerk of the
Appellate Courts

# IN THE SUPREME COURT OF TENNESSEE
## AT NASHVILLE
### May 29, 2024 Session

## CHARLES YOUREE, JR. v. RECOVERY HOUSE OF EAST TENNESSEE, LLC ET AL.

**Appeal by Permission from the Court of Appeals**
**Chancery Court for Davidson County**
**No. 20-1136-II      Anne C. Martin, Chancellor**

———————————————————————

**No. M2021-01504-SC-R11-CV**

———————————————————————

Charles Youree, Jr. filed a lawsuit against two business entities seeking to hold them liable, under the theory of piercing the corporate veil, for a judgment he previously had obtained against another business entity. When the two entities did not answer, he was awarded a default judgment. The entities moved to vacate the default judgment before it became final. They argued that the trial court should not have entered judgment in the first place because the complaint did not plead the elements required for piercing the corporate veil. They also argued that their failure to respond was due to excusable neglect, but they later withdrew that argument. The trial court denied the motion to vacate. In determining that the complaint stated a claim for piercing the corporate veil, the trial court evaluated the factual allegations under the so-called Allen factors. See Fed. Deposit Ins. Corp. v. Allen, 584 F. Supp. 386 (E.D. Tenn. 1984). On appeal as of right, the Court of Appeals reversed. The court looked not to the Allen factors, but rather to a three-element standard set forth in Continental Bankers Life Insurance Co. of the South v. Bank of Alamo, 578 S.W.2d 625 (Tenn. 1979). We granted permission to appeal. Based on our review of the applicable law, we hold that it was proper in this case to address whether the complaint pleaded the elements for piercing the corporate veil even absent a claim of excusable neglect. We further hold that the Continental Bankers elements provide the correct framework for piercing the corporate veil and that the complaint failed to plead the elements sufficiently. Accordingly, we affirm the judgment of the Court of Appeals that the trial court erred in denying the motion to vacate the default judgment. We remand this case to the trial court for further proceedings consistent with this opinion.

**Tenn. R. App. P. 11 Appeal by Permission;**
**Judgment of the Court of Appeals Affirmed;**
**Case Remanded to the Trial Court**

JEFFREY S. BIVINS, J., delivered the opinion of the Court, in which HOLLY KIRBY, C.J., and ROGER A. PAGE, SARAH K. CAMPBELL, and DWIGHT E. TARWATER, JJ., joined.

Benjamin E. Goldammer and Casey R. Malloy, Nashville, Tennessee, for the appellant, Charles Youree, Jr.

Donald Capparella and Jacob A. Vanzin, Nashville, Tennessee, and Edward Griffith, Brooklyn, New York, for the appellees, Recovery House of East Tennessee, LLC and RHT Holdings, LLC.

**OPINION**

**I. FACTUAL AND PROCEDURAL BACKGROUND**

This case arises from a commercial lease contract that was broken by the business entity leaseholder.[1] Tennessee resident Charles Youree, Jr. ("the Plaintiff") owns a commercial office building in Davidson County, Tennessee. In March 2018, he leased a suite in that building to a Wyoming limited liability company known as Recovery Solutions Network, LLC ("RSN"). RSN breached the lease agreement by failing to pay rent, failing to make certain improvements, and abandoning the premises.[2] The Plaintiff filed a lawsuit against RSN for breach of contract and unjust enrichment. He obtained a default judgment in the amount of $56,267.46. However, the Plaintiff was unable to secure any payments on the default judgment against RSN.

In November 2020, the Plaintiff filed a second suit, which is the subject of the present appeal. The defendants in this suit were two Wyoming limited liability companies, Recovery House of East Tennessee, LLC ("RHET") and RHT Holdings, LLC ("RHT") (collectively, "the Defendants"). According to the complaint, the Defendants were "affiliated with and/or subsidiaries of" RSN. The Plaintiff alleged that the Defendants were the "functional alter egos" of RSN and sought to pierce the corporate veil to hold the Defendants liable for the judgment he had obtained against RSN.

The complaint described the operational relationship between the three companies. RHT owned real property in Anderson County, Tennessee. RHET operated a substance abuse treatment facility at the Anderson County property owned by RHT. RSN leased the suite in the Plaintiff's building in Davidson County to operate a call center to refer patients to the substance abuse treatment facility located in Anderson County. RSN also operated

---

[1] This case resulted in a default judgment. As a result, our recitation of the facts is based primarily on the allegations in the complaint. Our recitation is not intended to be determinative of disputed factual issues on remand. See Gordon v. Greenview Hosp., Inc., 300 S.W.3d 635, 641 n.1 (Tenn. 2009) (citing Masada Inv. Corp. v. Allen, 697 S.W.2d 332, 339–40 (Tenn. 1985)).

[2] It appears that RSN went out of business in 2019.

a website that marketed RHET's Anderson County location for substance abuse treatment services.

The Plaintiff alleged that RSN, RHET, and RHT were used as the "instrumentality or business conduit for one another." In that vein, the Plaintiff alleged that RSN, RHET, and RHT used the same corporate office for their business. Additionally, the Plaintiff alleged that RSN, RHET, and RHT employed the same employees and that RSN's website touted a single roster of employees for all substance abuse treatment locations.[3] Lastly, the Plaintiff alleged that RSN, RHET, and RHT had "overlapping ownership" and failed to maintain arm's-length relationships among one another.

When the Defendants failed to answer the complaint, the Plaintiff filed a motion for default judgment. The Defendants failed to respond to the motion. As a result, the trial court entered a default judgment stating that the motion was unopposed, finding simply that "the motion [was] well[-]taken," and awarding the Plaintiff judgment in the amount of $56,267.46—the amount of the default judgment against RSN. The judgment noted that it disposed of all claims in the case. It was entered on April 9, 2021.

On May 10, 2021, the Defendants moved to vacate the default judgment, citing Rules 55.02, 59.04, and 60.02 of the Tennessee Rules of Civil Procedure.[4] The Defendants initially argued: (1) that the trial court should not have entered the default judgment in the first place because the complaint failed to plead the required elements for piercing the corporate veil; and (2) that their lack of response was due to excusable neglect. However, the Defendants ultimately declined to pursue their excusable neglect argument.

Instead, they argued only that the complaint lacked factual allegations as to the elements necessary to pierce the corporate veil, meaning that the complaint failed to state a claim for the relief sought. More specifically, the Defendants contended that the complaint failed to allege any facts with respect to two of three elements that they asserted were required for piercing the corporate veil: "that the alleged complete domination of one company over its alleged alter ego was used to commit a wrong or breach of duty, and such breach is the proximate cause of plaintiff's injury." The Defendants drew those elements from two cases, Noranda Aluminum, Inc. v. Golden Aluminum Extrusion, LLC, No. M2013-02274-COA-R3-CV, 2014 WL 4803149, at *3 (Tenn. Ct. App. Sept. 26, 2014), and Pamperin v. Streamline Manufacturing, Inc., 276 S.W.3d 428, 437–38 (Tenn. Ct. App. 2008).[5]

---

[3] An exhibit to the complaint indicated that RSN provided marketing services not only for the Anderson County location operated by RHET, but also for a New Orleans location apparently operated by a company known as Qualis Care.

[4] The Defendants also lodged an answer to the complaint as an attachment to their motion.

[5] Interestingly, the Defendants did not cite directly to Continental Bankers.

In opposing the motion to vacate, the Plaintiff did not focus on the elements raised by the Defendants in their motion. Instead, the Plaintiff looked to what are commonly referred to as the Allen factors to determine whether the complaint alleged facts that, taken as true, would suffice to pierce the corporate veil. Those factors are:

(1) whether there was a failure to collect paid in capital; (2) whether the corporation was grossly undercapitalized; (3) the non[-]issuance of stock certificates; (4) the sole ownership of stock by one individual; (5) the use of the same office or business location; (6) the employment of the same employees or attorneys; (7) the use of the corporation as an instrumentality or business conduit for an individual or another corporation; (8) the diversion of corporate assets by or to a stockholder or other entity to the detriment of creditors, or the manipulation of assets and liabilities in another; (9) the use of the corporation as a subterfuge in illegal transactions; (10) the formation and use of the corporation to transfer to it the existing liability of another person or entity; and (11) the failure to maintain arm['s-]length relationships among related entities.

Allen, 584 F. Supp. at 397.

The Plaintiff asserted that the complaint alleged that the three companies operated out of the same property, that they used the same employees, that they jointly marketed from the same website, and that they failed to maintain arm's-length relationships among one another. The Plaintiff contended that these facts fit squarely within four of the Allen factors, specifically factors five, six, seven, and eleven. Thus, the Plaintiff argued that the complaint satisfied the "low pleading bar" required under Rule 8.01 of the Tennessee Rules of Civil Procedure to state a claim for piercing the corporate veil.

The trial court denied the Defendants' motion. In analyzing the Defendants' argument, the trial court pointed out that the failure to answer operated to admit the factual allegations in the complaint. The trial court then noted factual allegations "such as the use of the same offices, employment of the same individuals, marketing of Defendants' property on RSN's website, overlapping ownership and a general 'fail[ure] to maintain arms-length [sic] relationships amongst one another.'" The trial court accepted the Plaintiff's argument that these facts satisfied various Allen factors and sufficed to articulate a claim for piercing the corporate veil. Additionally, the trial court found the Defendants' citation to Noranda Aluminum unpersuasive because it addressed Missouri law. The trial court further observed that the elements listed in Noranda Aluminum were not among the Allen factors. The trial court did not address the Defendants' citation to Pamperin.

On the Defendants' appeal as of right, the Court of Appeals reversed. Youree v. Recovery House of E. Tenn., LLC, No. M2021-01504-COA-R3-CV, 2023 WL 3721938,

- 4 -

at *1 (Tenn. Ct. App. May 30, 2023), perm. app. granted, (Tenn. Nov. 21, 2023). The court first noted that "[t]he propriety of a trial court's denial of a motion 'to set aside a default judgment depends in part on whether the default judgment was properly entered in the first place.'" Id. at *2 (quoting H.G. Hill Realty Co., LLC v. Re/Max Carriage House, Inc., 428 S.W.3d 23, 29–30 (Tenn. Ct. App. 2013)). The court then concluded that the trial court erred by focusing on the Allen factors in evaluating the factual allegations in the complaint. Instead, the court held that the complaint must state facts addressing three required elements to pierce the corporate veil, which the court drew from this Court's opinion in Continental Bankers:

(1)     The parent corporation, at the time of the transaction complained of, exercises complete dominion over its subsidiary, not only of finances, but of policy and business practice in respect to the transaction under attack, so that the corporate entity, as to that transaction, had no separate mind, will, or existence of its own.

(2)     Such control must have been used to commit fraud or wrong, to perpetuate the violation of a statutory or other positive legal duty, or a dishonest and unjust act in contravention of a third parties' rights.

(3)     The aforesaid control and breach of duty must proximately cause the injury or unjust loss complained of.

Id. at *5 (quoting Continental Bankers, 578 S.W.2d at 632). The Continental Bankers elements were the same elements that the Defendants unsuccessfully proposed to the trial court through citation to Noranda Aluminum and Pamperin. See Noranda Aluminum, 2014 WL 4803149, at *3; Pamperin, 276 S.W.3d at 437–38. Indeed, Pamperin cited Continental Bankers as the source of the elements. 276 S.W.3d at 438.

As for the Allen factors, the intermediate appellate court concluded that they were not applicable to this case. The court stated that "the Continental Bankers test applies to efforts to pierce the veil between parent and subsidiary corporations [and to reach the owner of a corporation], while the Allen factors are considered when seeking to hold a shareholder personally liable." Youree, 2023 WL 3721938, at *6 (alteration in original) (quoting Layne Christensen Co. v. City of Franklin, 449 F. Supp. 3d 748, 760–61 (M.D. Tenn. 2020)). In drawing this conclusion, the court also cited two cases from this Court, Rogers v. Louisville Land Co., 367 S.W.3d 196 (Tenn. 2012), and CAO Holdings, Inc. v. Trost, 333 S.W.3d 73 (Tenn. 2010). Id.

Evaluating this case under the Continental Bankers elements, the intermediate appellate court found the complaint deficient. The court stated that the complaint lacked direct allegations as to each of the Continental Bankers elements, and no inference could be drawn that evidence on those material points would be introduced at trial. Id. at *7.

Thus, the court concluded that the trial court should not have awarded the Plaintiff a default judgment in the first place, "because the complaint failed to allege sufficient facts to articulate a claim for piercing the corporate veil to hold [the] Defendants liable for RSN's debt." Id. Accordingly, the court held that the trial court erred in denying the Defendants' motion to vacate the default judgment. Id. Rather than dismiss the complaint, the court remanded to the trial court for further proceedings, given the potential availability of amending the complaint. Id. at *8 (citing Tenn. R. Civ. P. 15.01).

We granted the Plaintiff permission to appeal.

## II. ANALYSIS

Before this Court, the Plaintiff makes two arguments. First, the Plaintiff argues that it was error for the Court of Appeals to even address whether the complaint alleged the elements for piercing the corporate veil, given that the Defendants abandoned their excusable neglect argument. Second, assuming the Court of Appeals properly inquired into the allegations of the complaint, the Plaintiff argues that, in fact, he did assert sufficient factual allegations to articulate a claim for piercing the corporate veil.

### A. Standard of Review

At issue in this case is the trial court's decision to deny the Defendants' motion to vacate the default judgment. The Defendants cited Rules 55.02 (Motion to Set Aside a Default Judgment), 59.04 (Motion to Alter or Amend a Judgment), and 60.02 (Motion for Relief from a Final Judgment) in their motion. As we will explain later in this opinion, the Defendants' motion most properly is considered under Rule 59.04. We review the trial court's decision in this case for an abuse of discretion. See Discover Bank v. Morgan, 363 S.W.3d 479, 487 (Tenn. 2012); Burris v. Burris, 512 S.W.3d 239, 245 (Tenn. Ct. App. 2016); Pryor v. Rivergate Meadows Apartment Assocs. Ltd. P'ship, 338 S.W.3d 882, 885 (Tenn. Ct. App. 2009).

In reviewing for an abuse of discretion, an appellate court does not second-guess the trial court or substitute its judgment for that of the trial court. Lee Med., Inc. v. Beecher, 312 S.W.3d 515, 524 (Tenn. 2010). Instead, our well-established standard is as follows:

> An abuse of discretion occurs when a court strays beyond the applicable legal standards or when it fails to properly consider the factors customarily used to guide the particular discretionary decision. A court abuses its discretion when it causes an injustice to the party challenging the decision by (1) applying an incorrect legal standard, (2) reaching an illogical or unreasonable decision, or (3) basing its decision on a clearly erroneous assessment of the evidence.

Harmon v. Hickman Cmty. Healthcare Servs., Inc., 594 S.W.3d 297, 305 (Tenn. 2020) (quoting Lee Med., Inc., 312 S.W.3d at 524). Although the standard is deferential, it does not serve to "immunize a lower court's decision from any meaningful appellate scrutiny." Lee Med., Inc., 312 S.W.3d at 524.

Even in the context of reviewing the denial of a motion to vacate a default judgment for an abuse of discretion, we afford no deference to the trial court's determinations on issues of law—such as the elements required to articulate a claim for piercing the corporate veil—which we review de novo with no presumption of correctness. See Ball v. McDowell, 288 S.W.3d 833, 836 (Tenn. 2009); Orten v. Orten, 185 S.W.3d 825, 829 (Tenn. Ct. App. 2005).

## B. Challenging the Default Judgment

Rule 55 of the Tennessee Rules of Civil Procedure authorizes the entry of a default judgment when a party "has failed to plead or otherwise defend." Tenn. R. Civ. P. 55.01. This option serves the important policy of enforcing compliance with our rules of procedure and facilitating the speedy determination of litigation. Cf. 10A Charles Alan Wright et al., Federal Practice and Procedure § 2693, at 97 (3d ed. 1998). However, Rule 55 makes clear that a default judgment is not a matter of right. See Tenn. R. Civ. P. 55.01 (stating that "judgment by default may be entered" upon certain circumstances). Thus, the entry of a default judgment is permissive rather than mandatory. In deciding whether to enter a default judgment, our trial courts must be mindful that a default judgment is a drastic sanction disfavored under Tennessee law. Henry v. Goins, 104 S.W.3d 475, 481 (Tenn. 2003) (noting that, as a dismissal on procedural grounds, a default judgment runs counter to our judicial system's general objective of disposing of cases on the merits).

Rule 55 also expressly provides that a default judgment may be set aside. Tenn. R. Civ. P. 55.02. When such relief is sought, the defendant is invoking equitable principles. See Patterson v. Rockwell Int'l, 665 S.W.2d 96, 100 (Tenn. 1984). In recognition that default judgments are not favored under Tennessee law, our courts construe requests to set aside a judgment "much more liberally in cases involving a default judgment than in cases following a trial on the merits." Henry, 104 S.W.3d at 481. Thus, as a general matter, a trial court ordinarily should exercise its discretion in favor of allowing a case to be heard on its merits. Parks v. Mid-Atlantic Fin. Co., 343 S.W.3d 792, 798 (Tenn. Ct. App. 2011) (citing Patterson v. SunTrust Bank, 328 S.W.3d 505, 509–10 (Tenn. Ct. App. 2010)). To that end, this Court has stated that a request to vacate a default judgment "should be granted if there is reasonable doubt as to the justness of dismissing the case before it can be heard on its merits." Henry, 104 S.W.3d at 481.

The mechanism to set aside a default judgment in Rule 55 provides simply: "For good cause shown the court may set aside a judgment by default in accordance with Rule

60.02." Tenn. R. Civ. P. 55.02. Rule 60.02, in turn, spells out various reasons that a trial court may relieve a party from a *final* judgment.

> On motion and upon such terms as are just, the court may relieve a party or the party's legal representative from a final judgment, order or proceeding for the following reasons: (1) mistake, inadvertence, surprise or excusable neglect; (2) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (3) the judgment is void; (4) the judgment has been satisfied, released or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that a judgment should have prospective application; or (5) any other reason justifying relief from the operation of the judgment. The motion shall be made within a reasonable time, and for reasons (1) and (2) not more than one year after the judgment, order or proceeding was entered or taken.

Tenn. R. Civ. P. 60.02.

In this case, the Defendants initially asserted two grounds in support of their motion to vacate the default judgment: (1) that the Plaintiff was not entitled to a default judgment in the first place because the complaint failed to plead the required elements for the relief sought; and (2) excusable neglect under Rule 60.02(1). Thereafter, however, the Defendants elected not to proceed with excusable neglect. This decision was memorialized in the trial court through a stipulation that the Defendants "withdraw their argument that the Default Judgment was not willful and was the product of excusable neglect."

The Plaintiff argues that the Defendants' decision not to proceed with excusable neglect "is the outcome-determinative fact in this case." He points out that this Court identified certain criteria to help delineate exactly what merits relief from a judgment on the ground of excusable neglect. Those criteria "include (1) whether the default was willful; (2) whether the defendant has a meritorious defense; and (3) the level of prejudice that may occur to the non-defaulting party if relief is granted." Discover Bank, 363 S.W.3d at 491 (quoting Tenn. Dep't of Human Servs. v. Barbee, 689 S.W.2d 863, 866 (Tenn. 1985)). The Plaintiff also points out that this Court held that when a party seeks relief from a judgment based on excusable neglect, "a reviewing court must first determine whether the conduct precipitating the default was willful. If the court finds that the defaulting party has acted willfully, the judgment cannot be set aside on 'excusable neglect' grounds, and the court need not consider the other factors." Id. at 494. Taking these pronouncements together, the Plaintiff contends that when the Defendants elected not to pursue excusable neglect (stipulating that they withdrew their argument that the default was not willful), they necessarily precluded themselves from attacking whether the complaint sufficiently pleaded the elements for piercing the corporate veil, thereby ending the inquiry into whether to vacate the default judgment. In other words, the Plaintiff argues that analysis

of whether the complaint pleaded the required elements for piercing the corporate veil should have occurred only as part of an evaluation of whether the judgment should be set aside on the ground of excusable neglect in accordance with Rule 60.02(1) (i.e., as the second criterion of the excusable neglect analysis, whether the defendant has a meritorious defense).

The Plaintiff's argument presupposes that the Defendants were limited to the grounds set forth in Rule 60.02.[6] The Defendants, however, cited not only Rules 55.02 and 60.02 in their motion to vacate the default judgment, but also Rule 59.04. Rule 60.02 provides an avenue for relief from a *final* judgment. Presumably, the Defendants cited Rule 59.04—pertaining to motions to alter or amend a judgment, which shall be filed within thirty days after the entry of the judgment—because the judgment in this case was not final when the Defendants sought relief from it.[7] Indeed, this Court has observed that in the context of a motion to set aside a non-final default judgment, "motions for relief should be premised upon Rule 59." Discover Bank, 363 S.W.3d at 489.

We recognize that Rule 55.02 refers specifically to Rule 60.02. Certainly, if a default judgment has become final, the appropriate method to seek relief from the judgment is in accordance with Rule 60.02, which addresses itself to relief from final judgments. See id. at 489–90. However, a judgment that has not become final is a different matter. As this Court recognized in Discover Bank, for thirty days after entry of a default judgment, a party may seek relief "premised upon Rule 59." Id. at 489. The Defendants did so in this case. The question becomes, then, whether the Defendants—in accordance with Rule 59— may seek to vacate the default judgment based on their argument that the complaint failed to plead the elements required to pierce the corporate veil.[8] See U.S. Bank, N.A. v. Tenn.

---

[6] In response to the Plaintiff's argument, the Defendants argue in this Court that if a motion to vacate requires one of the grounds under Rule 60.02 to reach the question of whether the complaint failed to state a claim for relief, then they would contend that the default judgment was void and should be set aside under Rule 60.02(3). The Plaintiff correctly points out that the Defendants did not assert that the default judgment was void under Rule 60.02(3) in the courts below, and he suggests that the argument, therefore, was forfeited. Given our resolution of this appeal, we need not address the Defendants' argument. As a result, we offer no opinion as to whether the default judgment was void.

[7] Unless otherwise indicated, we refer in this opinion to "final" in the sense that no more than thirty days passed since entry of the default judgment, not merely in the sense that the judgment disposed of all claims as to all parties. See Discover Bank, 363 S.W.3d at 488 n.17.

[8] We note that Rule 13 of the Tennessee Rules of Appellate Procedure states, in part, that "[a] defaulted defendant cannot raise on appeal the defense of failure to state a claim upon which relief can be granted." Tenn. R. App. P. 13(f). The parties did not cite Rule 13(f) in their briefs. Furthermore, at oral argument, the Plaintiff expressly declined to rely on Rule 13(f). Accordingly, we do not address the implications of Rule 13(f) in resolving this appeal. Because we offer no interpretation of Rule 13(f) here, nothing in this opinion precludes an argument in a future case that Rule 13(f) prohibits a defaulted defendant from challenging the sufficiency of the complaint's allegations on appeal.

<u>Farmers Mut. Ins. Co.</u>, 410 S.W.3d 820, 826 (Tenn. Ct. App. 2012) (identifying whether motion "was one recognized under Rule 59" as a threshold question).

Certainly, there is "considerable overlap" between Rule 59.04 and Rule 60.02 in the context of seeking relief from a default judgment. <u>Henry</u>, 104 S.W.3d at 480. For example, this Court has recognized the availability of relief under Rule 59 on the ground of excusable neglect. <u>See</u> <u>Discover Bank</u>, 363 S.W.3d at 492 ("Rule 59.04 and Rule 60.02(1) each provide a vehicle for seeking relief from orders entered as a result of 'mistake, inadvertence, or excusable neglect' by a party's counsel." (quoting <u>Ferguson v. Brown</u>, 291 S.W.3d 381, 387 (Tenn. Ct. App. 2008))); <u>Campbell v. Archer</u>, 555 S.W.2d 110, 112–13 (Tenn. 1977); <u>see also</u> <u>Pryor</u>, 338 S.W.3d at 885. However, Rule 60.02 addresses relief from *final* judgments. There is an interest in terminating litigation that favors the circumscribed avenues for relief detailed in Rule 60.02 in the case of final judgments. <u>Cf.</u> Wright et al., <u>supra</u>, § 2693, at 99 (noting with respect to default judgments that "[e]ffective judicial administration requires that at some point disputes be treated as finally and definitively resolved").

The legitimate interest in the finality of judgments, even default judgments, is not the same in the context of a Rule 59.04 motion, precisely because the judgment is not final. Given the lessened finality interest, the grounds for relief from a non-final default judgment under Rule 59.04 are not limited to those circumstances set forth in Rule 60.02. Instead, as pertinent to this case, Rule 59.04 also offers a limited vehicle to correct a clear error of law in a non-final default judgment. <u>See, e.g.</u>, <u>Burris</u>, 512 S.W.3d at 245 (quoting <u>In re M.L.D.</u>, 182 S.W.3d 890, 895 (Tenn. Ct. App. 2005)) (identifying the available grounds for relief under Rule 59.04 as "when the controlling law changes before the judgment becomes final; when previously unavailable evidence becomes available; or to correct a clear error of law or to prevent injustice").

We must determine whether the ground for relief asserted by the Defendants in their motion to vacate properly fell within the ambit of Rule 59.04's vehicle to correct a clear error of law in a non-final default judgment. The Defendants contend that the trial court— based on the Defendants' failure "to plead or otherwise defend," Tenn. R. Civ. P. 55.01— exercised discretion to enter a default judgment even though the factual allegations in the complaint, admitted as true, did not state a claim for the relief sought by the Plaintiff. It is well-settled that, notwithstanding the admission of factual allegations associated with a default, a defaulting party does not admit legal conclusions. <u>See, e.g.</u>, <u>Brashears v. Hartsook</u>, 450 S.W.2d 7, 9 (Tenn. 1969); <u>Gamble v. Waters</u>, 274 S.W.2d 3, 4 (Tenn. 1954). Thus, liability under a complaint is not deemed established simply because of the failure to plead or otherwise defend. <u>See</u> <u>Potts v. Mayforth</u>, 59 S.W.3d 167, 172 (Tenn. Ct. App. 2001) ("[A] default judgment 'will not authorize a decree in favor of the plaintiff, unless the complaint shows a ground for relief against the defendant.'" (quoting <u>Shahrdar v. Global Housing, Inc.</u>, 983 S.W.2d 230, 236–37 (Tenn. Ct. App. 1998))).

In other words, it is not a defendant's mere failure to plead or otherwise defend that warrants a trial court in entering a default judgment. Rather, there must be a sufficient basis in the pleadings for the judgment entered. See Thomson v. Wooster, 114 U.S. 104, 113 (1884). Stated another way, "a default judgment cannot stand on a complaint that fails to state a claim." Capitol Records v. Carmichael, 508 F. Supp. 2d 1079, 1083 (S.D. Ala. 2007) (quoting Chudasama v. Mazda Motor Corp., 123 F.3d 1353, 1370 n.41 (11th Cir. 1997)).

Under these circumstances, we conclude that the Defendants properly raised the question of whether the complaint alleged the required elements for piercing the corporate veil through their motion to vacate the default judgment, even absent a claim of excusable neglect. The Defendants' argument fell within the permissible grounds of a Rule 59.04 motion, in that it sought relief from the non-final default judgment based on correcting what would be a clear error of law before the judgment became final. Thus, like the Court of Appeals, we will evaluate the question of whether the complaint alleged the required elements for piercing the corporate veil in the course of our review of whether the trial court correctly denied the Defendants' motion to vacate.

We take this opportunity to reiterate certain principles that guide our trial courts in deciding whether to enter a default judgment. Under Tennessee law, the entry of a default judgment upon a party's failure to answer or otherwise defend is permissive rather than mandatory. See Tenn. R. Civ. P. 55.01. Furthermore, a party's failure to answer serves to admit the properly pleaded factual allegations in a complaint, but not any legal conclusions. See, e.g., Brashears, 450 S.W.2d at 9; Patterson, 665 S.W.2d at 101.

Based on these principles, our trial courts have an independent obligation, in exercising their discretion to enter a default judgment, to ensure that the admitted factual allegations are legally sufficient to establish a valid claim against the defaulting party. This obligation is not unique to our courts. See, e.g., Christakis v. D'Arc, 29 N.E.3d 823, 829 (Mass. 2015) (stating that "[i]n order for a judge to enter a judgment by default, the factual allegations in the complaint must be sufficient to state a claim for relief"); Am. Towers Owners Ass'n, Inc. v. CCI Mech., Inc., 930 P.2d 1182, 1194 (Utah 1996), abrogated on other grounds by Davencourt at Pilgrims Landing Homeowners Ass'n v. Davencourt at Pilgrims Landing, LLC, 221 P.3d 234 (Utah 2009) (stating that a trial court should enter a default judgment "only if it is determined those [admitted] facts established an actionable claim" (quoting Stevens v. Collard, 837 P.2d 593, 596 n.5 (Utah. Ct. App. 1992))). Cf., e.g., Marshall v. Baggett, 616 F.3d 849, 852 (8th Cir. 2010) (noting that before entering a default judgment, it is incumbent upon the trial court to ascertain "whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit mere conclusions of law").

- 11 -

*C. Piercing the Corporate Veil*

It is axiomatic that a corporation is a distinct legal entity that exists separately from its shareholders, officers, and directors.[9]  See Gordon v. Greenview Hosp., Inc., 300 S.W.3d 635, 650 (Tenn. 2009); Cambio Health Sols., LLC v. Reardon, 213 S.W.3d 785, 790 (Tenn. 2006); Cathy S. Krendl & James R. Krendl, Piercing the Corporate Veil: Focusing the Inquiry, 55 Denv. L. J. 1, 1 (1978) (describing the concept as a "fundamental tenet of Anglo-American law").  Thus, it is "accepted as one of the first principles of American law that those who own shares in corporations, whether such shareholders are individuals or are themselves corporations, normally are not liable for the debts of their corporations."  Stephen B. Presser, Piercing the Corporate Veil § 1:1, Westlaw (database updated Dec. 2024).  This established principle of corporate law is commonly referred to as "limited liability."  See Jonathan Macey & Joshua Mitts, Finding Order in the Morass: The Three Real Justifications for Piercing the Corporate Veil, 100 Cornell L. Rev. 99, 105 (2014) (observing that "limited liability derives from the concept of corporate separateness, and corporate separateness is now firmly ingrained in our legal culture").  Furthermore, it is perfectly acceptable "to incorporate for the express purpose of limiting the liability of the corporation's owners."  Presser, supra, § 1.1; see also Macey & Mitts, supra, at 100.  Indeed, modern business often operates under the premise of limited liability, and that premise—expressed through the corporate form—is intended to serve important interests, not the least of which is economic expansion.  See Presser, supra, § 1:12.

Nevertheless, it is well-recognized that the limited liability associated with the corporate form is not absolute.  Courts express this limitation through the doctrine of "piercing the corporate veil."  At the most general level, the corporate veil is pierced when a court determines that a corporate debt is not merely a debt of the corporation but, in fairness, should be considered the debt of another individual or entity.  See id. § 1.1.  Piercing the corporate veil is an equitable doctrine, commonly said to be used to prevent injustice.  Franklin A. Gevurtz, Piercing Piercing: An Attempt to Lift the Veil of Confusion Surrounding the Doctrine of Piercing the Corporate Veil, 76 Or. L. Rev. 853, 866 (1997); see also Presser, supra, § 1:1.  The doctrine can be understood as an attempt to balance the benefits of limited liability against its costs.[10]  Frank H. Easterbrook & Daniel R. Fischel, Limited Liability and the Corporation, 52 U. Chi. L. Rev. 89, 109 (1985).

_____

[9] In this opinion, we refer to corporations and piercing the "corporate" veil.  The business entities involved in this case were limited liability companies, not corporations.  Our Court of Appeals has applied the same standard to limited liability companies.  See Edmunds v. Delta Partners, LLC, 403 S.W.3d 812, 829 (Tenn. Ct. App. 2012) ("Despite the inapplicability of the remedy's name, the 'corporate veil' of a Tennessee limited liability company may also be pierced, utilizing the same standards.").  Significantly, the parties in this case have not advocated for a different treatment of the issue given that distinction.  Thus, for purposes of the issues in this appeal, our discussion applies even though the business entities here are limited liability companies.

[10] Limited liability, in effect, "shifts some of the costs of doing business (the incursion of liability in tort or contract) to disappointed creditors, and away from shareholders."  Presser, supra, § 1:12.

Our courts presume corporate separateness and give substantial weight to the presumption. See Gordon, 300 S.W.3d at 651 (stating a reluctance "to disregard the separate existence of related corporations"). Given the strong presumption of corporate separateness embedded in our jurisprudence, piercing the corporate veil should be the exception, not the rule. See Edmunds v. Delta Partners, LLC, 403 S.W.3d 812, 829 (Tenn. Ct. App. 2012) (stating that piercing the corporate veil should occur only "with great caution and not precipitately" (quoting Schlater v. Haynie, 833 S.W.2d 919, 925 (Tenn. Ct. App. 1991))). This principle—that it should be difficult to pierce the corporate veil—is not controversial, but it begs the more challenging question of exactly how the corporate veil properly may be pierced.

There is a broad consensus that the doctrine of piercing the corporate veil is "among the most confusing in corporate law." Easterbrook & Fischel, supra, at 89; see also Presser, supra, § 1:1; Macey & Mitts, supra, at 100 ("The doctrine of piercing the corporate veil is shrouded in misperception and confusion."). The resolution of cases involving piercing the corporate veil has been susceptible to the use of rhetorical devices and picturesque terms that often serve as a shorthand for a conclusion without adequate discussion about how the conclusion was reached. See Macey & Mitts, supra, at 103 (critiquing decisions that are based on characterizations or metaphors—such as "alter ego" and "instrumentality"—rather than on carefully articulated reasoning); Gevurtz, supra, at 855 (noting that terms such as "sham," "alter ego," and "instrumentality" often confuse the issue); Krendl & Krendl, supra, at 8 ("The corporate veil area of law seems peculiarly susceptible to unhelpful rhetorical devices."). Indeed, the doctrine long ago was described as "enveloped in the mists of metaphor" by then-Judge Cardozo. Berkey v. Third Ave. Ry. Co., 155 N.E. 58, 61 (N.Y. 1926) (also cautioning that "[m]etaphors in law are to be narrowly watched, for starting as devices to liberate thought, they end often by enslaving it"). The passage of time since then-Judge Cardozo expressed that sentiment has not been particularly kind to the explication of the doctrine of piercing the corporate veil. See Presser, supra, § 1:1 (noting continuing confusion); see also Robert B. Thompson, Piercing the Corporate Veil: An Empirical Study, 76 Cornell L. Rev. 1036, 1036 (1991) (noting that "[p]iercing the corporate veil is the most litigated issue in corporate law"). Regrettably, the treatment of the doctrine in Tennessee has exhibited confusion over the years. We will endeavor to be more precise in this opinion.[11]

---

[11] The business entities involved in this case were formed in Wyoming. The lease between the Plaintiff and RSN is not in the record. Thus, it is unknown if it contained a choice-of-law provision. We note that in contract cases, Tennessee currently follows the traditional *lex loci contractus* rule. Under that rule, absent a contractual choice-of-law provision, the law of the state in which the contract was executed generally applies to disputes arising from the contract. See Williams v. Smith, 465 S.W.3d 150, 153 (Tenn. Ct. App. 2014); In re Estate of Davis, 184 S.W.3d 231, 234 (Tenn. Ct. App. 2004); see also Ohio Cas. Ins. Co. v. Travelers Indem. Co., 493 S.W.2d 465, 467 (Tenn. 1973). However, we acknowledge that our General Assembly has provided that "[t]he laws of the jurisdiction under which a foreign LLC is formed govern its formation, internal affairs and dissolution, and the liability of its members and representatives

Nearly fifty years ago, in a 1979 case involving a parent-subsidiary relationship, this Court defined the elements required to overcome the presumption of corporate separateness and "hold one corporation liable for the debts of another, often referred to as 'piercing the corporate veil.'" Continental Bankers, 578 S.W.2d at 631. In Continental Bankers, we noted the existence of an array of potentially confusing terms and theories on the subject, including "alter ego" and "instrumentality." Id. Consequently, this Court endeavored to craft a clearer formulation of the doctrine. Under Continental Bankers, piercing the corporate veil required proof of three elements:

> (1)     The parent corporation, at the time of the transaction complained of, exercises complete dominion over its subsidiary, not only of finances, but of policy and business practice in respect to the transaction under attack, so that the corporate entity, as to that transaction, had no separate mind, will, or existence of its own.
>
> (2)     Such control must have been used to commit fraud or wrong, to perpetuate the violation of a statutory or other positive legal duty, or a dishonest and unjust act in contravention of a third parties' rights.
>
> (3)     The aforesaid control and breach of duty must proximately cause the injury or unjust loss complained of.

Id. at 632. In analyzing the issue in that case, we acknowledged the existence of common officers and directors between the parent and the subsidiary, as well as the use of the same address and telephone number. Id. at 636. However, we concluded that any general dominion or control did not carry over to the specific transaction at issue, and we further concluded that any general dominion or control "was not used to commit fraud, misrepresentation or a dishonest or unjust act." Id. at 637. Thus, we held that the elements necessary to pierce the corporate veil had not been proved in that case. Id.

It is worth noting that this Court did not invent this standard in Continental Bankers. The approach we adopted was well-established as early as 1931. See Presser, supra, § 1:6. The approach mirrored that of scholar Frederick J. Powell, who articulated a three-element test for piercing the corporate veil in the parent-subsidiary context. The three elements "that needed to be met before the veil could be pierced" were:

---

. . . ." Tenn. Code Ann. § 48-249-901 (2019). In this case, the parties addressed the doctrine of piercing the corporate veil under Tennessee law. Consequently, we conclude that, for purposes of this appeal, the parties have forfeited any argument that another state's law governs the inquiry into the appropriate standard for piercing the corporate veil. See Williams v. BASF Catalysts LLC, 765 F.3d 306, 316–17 (3d Cir. 2014).

(1) the "alter ego," or "mere instrumentality" test, requiring that the subsidiary be completely under the control and domination of the parent, (2) the "fraud or wrong" or "injustice" test, requiring that the defendant parent's conduct in using the subsidiary have been somehow unjust, fraudulent, or wrongful towards the plaintiff, and (3) the "unjust loss or injury" test, requiring that the plaintiff actually have suffered some harm as a result of the conduct of the defendant parent.

Id.; see also Krendl & Krendl, supra, at 15 (identifying the three prongs of Powell's standard: "instrumentality, improper purpose, and proximate causation").

Significantly, under this approach, "[i]t was not enough . . . for the subsidiary to be utterly dominated by the parent.  In addition, there must be some 'injustice' perpetrated, and there must be some actual harm caused to the plaintiff."  Presser, supra, § 1:6.

Five years after Continental Bankers, the United States District Court for the Eastern District of Tennessee released its opinion in Allen.[12]  The Allen court ultimately pierced the corporate veil, finding it an "appropriate case" for "a corporation and the individual or individuals owning all its stock and assets [to] be treated as identical, the corporate cloak being disregarded where used as a cover for fraud or illegality."  Allen, 584 F. Supp. at 397.  In reaching that conclusion, the court stated:

Factors to be considered in determining whether to disregard the corporate veil include not only whether the entity has been used to work a fraud or injustice in contravention of public policy, but also: (1) whether there was a failure to collect paid in capital; (2) whether the corporation was grossly undercapitalized; (3) the non[-]issuance of stock certificates; (4) the sole ownership of stock by one individual; (5) the use of the same office or business location; (6) the employment of the same employees or attorneys; (7) the use of the corporation as an instrumentality or business conduit for an individual or another corporation; (8) the diversion of corporate assets by or to a stockholder or other entity to the detriment of creditors, or the manipulation of assets and liabilities in another; (9) the use of the corporation as a subterfuge in illegal transactions; (10) the formation and use of the corporation to transfer to it the existing liability of another person or entity; and (11) the failure to maintain arm['s-]length relationships among related entities.[13]

---

[12] Of course, Allen is not binding precedent in this Court.

[13] Interestingly, Frederick Powell's treatise also compiled a list of factors to aid the determination of whether the elements of his test were met.  There are similarities between those factors and the Allen factors.  See Presser, supra, § 1:6.

Allen, 584 F. Supp. at 397.  It is worth noting that, despite the subsequent focus on the eleven listed factors, the Allen court cited Continental Bankers with approval and stated:

> [W]hen a corporation is dominated by an individual or individuals not only as to finance but also as to policy and business practices so that the corporation has no mind, will, or existence of its own and this domination is used to commit a wrong, or fraud or perpetrate a violation of statutory or positive legal duty, the corporate veil will be pierced.

Id. at 397–98 (citing Continental Bankers, 578 S.W.2d at 632).

In the ensuing years, as this case demonstrates, confusion has developed over the interplay between the Continental Bankers elements and the Allen factors.  Some cases have suggested that the Continental Bankers elements are applicable in the context of parent-subsidiary piercing, but not corporation-shareholder piercing.  See Schlater, 833 S.W.2d at 925; F & M Mktg. Servs., Inc. v. Christenberry Trucking & Farm, Inc., No. E2015-00266-COA-R3-CV, 2015 WL 6122872, at *4–5 (Tenn. Ct. App. Oct. 19, 2015) (holding that the Allen factors encompass the correct method to determine whether to pierce the corporate veil in the corporation-shareholder context).  On the other hand, some cases have expressed support for applying the Continental Bankers elements, while at the same time using the Allen factors to inform the inquiry, regardless of whether the context is parent-subsidiary or corporation-shareholder.  See Edmunds, 403 S.W.3d at 829–30; Underwood v. Miller, No. M2019-00269-COA-R3-CV, 2020 WL 730881, at *3–4 (Tenn. Ct. App. Feb. 13, 2020).

Our own opinions have not resolved the confusion.  This Court reiterated the Continental Bankers elements without referring to the Allen factors in cases such as Electric Power Board of Chattanooga v. St. Joseph Valley Structural Steel Corp., 691 S.W.2d 522, 526 (Tenn. 1985), and Cambio Health Solutions, LLC v. Reardon, 213 S.W.3d 785, 790 (Tenn. 2006).  However, this Court referred to the Allen factors without specifically mentioning the Continental Bankers elements in cases such as Rogers v. Louisville Land Co., 367 S.W.3d 196, 215–16 (Tenn. 2012) (discussing the Allen factors but also commenting that the record did not demonstrate the corporate entity "has been used to work a fraud or injustice in contravention of public policy"), and CAO Holdings, Inc. v. Trost, 333 S.W.3d 73, 88–89 (Tenn. 2010) (stating that Tennessee courts have consistently used the Allen factors to determine whether a corporation's separate legal identity should be ignored, but also observing that to pierce the corporate veil, "a court must be convinced that the separate corporate entity is a sham or a dummy or that disregarding the separate corporate entity is necessary to accomplish justice" (internal quotation marks omitted)).

This appeal gives us an opportunity to resolve some of the confusion.  Today, we re-affirm the Continental Bankers elements as the correct standard for piercing the

corporate veil, whether the context is parent-subsidiary or corporation-shareholder.  Thus, piercing the corporate veil requires proof of three elements:

> (1)    Control over the entity, not only of finances, but of policy and business practice in respect to the transaction under attack, so that the entity, as to that transaction, had no separate mind, will, or existence of its own;
>
> (2)    The control must have been used to commit fraud or wrong, to perpetuate the violation of a statutory or other positive legal duty, or to commit a dishonest and unjust act in contravention of a third party's rights; and
>
> (3)    The control and fraud, wrong, violation, or injustice must have proximately caused the injury or unjust loss complained of.

See Continental Bankers, 578 S.W.2d at 632; see also Elec. Power Bd. of Chattanooga, 691 S.W.2d at 526; Cambio Health Sols., LLC, 213 S.W.3d at 790; see generally Presser, supra, Intro. (stating that "the veil of limited liability should not be removed unless there has been (1) complete *domination* by the shareholder, owner, or other controller to the extent that the dominated entity has no separate mind, will, or existence of its own, (2) an intentional *abuse* of that control designed to favor the controller and injure creditors, and (3) an actual injury to creditors *caused* by that abusive manipulation" (emphasis in original)).

As for the Allen factors, we believe that the listed circumstances have their place in the analysis, regardless of the context.  In fact, the Allen court itself suggested as much by crafting the list of factors but also identifying the required elements of domination and a wrong, fraud, or violation of a statutory or positive legal duty.  Allen, 584 F. Supp. at 397– 98 (citing Continental Bankers, 578 S.W.2d at 632).

However, we caution that the Allen "factors" do not constitute a separate test.  They are merely a list of circumstances that often may be relevant to the existence of one or more of the three Continental Bankers elements.  Thus, the eleven circumstances listed in Allen, or any other relevant circumstance, may be used in determining whether the three required elements from Continental Bankers have been established.  See Edmunds, 403 S.W.3d at 829–30.

As a general matter, not every such circumstance need be present to establish the three elements, nor will any single circumstance be conclusive.  Rather, establishing any of the elements likely will depend on a combination of circumstances.  See id. at 830. Indeed, this Court has recognized that the conditions under which the corporate form will

be disregarded vary according to the unique circumstances of the individual case. Elec. Power Bd. of Chattanooga, 691 S.W.2d at 526.

We caution that checking items off a list is not a substitute for a purposive analysis of whether the Continental Bankers elements have been established. Regardless of the specific circumstances at issue, they must demonstrate all three elements of control, wrongdoing, and causation.

## D. Examining Whether the Complaint Alleges the Elements
## for Piercing the Corporate Veil

Having determined the appropriate elements for piercing the corporate veil, we turn to the question of whether the complaint in this case articulated a claim for such relief.[14] We agree with the Plaintiff that Tennessee follows a liberal notice pleading standard. See, e.g., Webb v. Nashville Area Habitat for Human., Inc., 346 S.W.3d 422, 426 (Tenn. 2011); see also Tenn. R. Civ. P. 8.01. Under this standard, a complaint "need not contain detailed allegations of all the facts giving rise to the claim." Webb, 346 S.W.3d at 427 (quoting Abshure v. Methodist Healthcare-Memphis Hosps., 325 S.W.3d 98, 103 (Tenn. 2010)). Nevertheless, a complaint "must contain sufficient factual allegations to articulate a claim for relief." Id. (quoting Abshure, 325 S.W.3d at 103–04). "The facts pleaded, and the inferences reasonably drawn from these facts, must raise the pleader's right to relief beyond the speculative level." Id. (quoting Abshure, 325 S.W.3d at 104).

Clearly, by failing to answer and suffering a default judgment, the Defendants were deemed to have admitted the material factual allegations in the complaint. See, e.g., Patterson, 665 S.W.2d at 101; Brashears, 450 S.W.2d at 9. To support his argument that the complaint articulated all three elements required for piercing the corporate veil, the Plaintiff relies on the following allegations of fact, which we quote in full, along with the corresponding paragraph numbers of the complaint:

> 5. [RHET] is engaged in providing treatment of substance abuse addiction in the State of Tennessee. [RHET] operates its Tennessee treatment center at property owned by RHT (which is one of its affiliates) at 105 Caldwell Circle, Oliver Springs, Anderson County, Tennessee 37840 ("RHT Property"). Both [RHET] and RHT are, on information and belief, affiliated with and/or subsidiaries of [RSN].

---

[14] Addressing this question entails a review of the Plaintiff's allegations, a task that this Court can perform as readily as the trial court, and an evaluation of whether those allegations articulate the elements for piercing the corporate veil. This presents a question of law. Accordingly, this Court is in a position to address the question now, so that we may determine whether the trial court erred in denying the Defendants' motion to vacate the default judgment.

- 18 -

8. RSN breached the Lease by failing to pay rent, by abandoning the premises and by failing to perform improvements to the premises required by the Lease. These breaches caused Youree over $50,000.00 in damages.

11. RHT and [RHET] are the functional alter egos of RSN and are each liable for the Judgment.

12. RHT, [RHET] and RSN use the same offices for their business. For example, [RHET] and RHT each have their principal office at 1712 Pioneer Avenue, Cheyenne, Wyoming 82001.

13. RHT, [RHET] and RSN employ the same employees. For example, on its website (Exhibit 2), RSN touts a single roster of personnel for all of its subsidiary locations.

14. RHT, [RHET] and RSN are used as the instrumentality or business conduit for one another. In addition to the single roster of employees, [RHET] markets its Tennessee location (at the RHT Property) on RSN's website (Exhibit 3).

15. On information and belief, RHT, [RHET] and RSN fail to maintain arms-length [sic] relationships amongst one another and have overlapping ownership.

The Plaintiff argues that these allegations in the complaint are sufficient to articulate a claim for piercing the corporate veil when considered under what he contends is the appropriate standard: "As long as the facts pleaded, and the inferences reasonably drawn from those facts, raise the pleader's right to relief beyond the speculative level, the pleading is sufficient."

We do not agree that what was pleaded in the complaint raised the Plaintiff's right to relief beyond the speculative level. From our review, we simply cannot conclude that the complaint contains any allegations pertaining to the second Continental Bankers element—that control was used to commit fraud, wrong, or injustice. Furthermore, the complaint also lacks any allegation that fraud, wrong, or injustice caused the Plaintiff's injury.

The Plaintiff maintains that these factual allegations touch upon various circumstances listed in Allen. Indeed, paragraphs five, twelve, thirteen, fourteen, and fifteen may well fit within certain circumstances listed in Allen, particularly those pertaining to the use of the same office or business location, the employment of the same employees, and the failure to maintain arm's-length relationships. Furthermore, those

- 19 -

factual allegations may well bear on the <u>Continental Bankers</u> control element. However, control alone is not enough to make out a claim for piercing the corporate veil. <u>See</u> Presser, <u>supra</u>, § 1:6 ("There must be some 'injustice' perpetrated, and there must be some actual harm caused to the plaintiff."). Nowhere in these allegations are facts bearing on the fraud/wrong/injustice element or the causation element.

Paragraph eleven contains an allegation that the Defendants were the "functional alter egos of RSN and are liable for the judgment." This allegation employs a picturesque term but amounts to little more than a legal conclusion. At most, it bears solely on the control element. The same can be said for paragraph fourteen's allegation that the entities were "used as the instrumentality or business conduit for one another." We reiterate that courts must be wary of reading too much into terms such as alter ego, instrumentality, or business conduit. Standing alone, they say nothing of the wrongdoing that must be established to pierce the corporate veil. <u>See</u> Presser, <u>supra</u>, § 1:12.

It is true that paragraph eight alleged that RSN breached its lease with the Plaintiff. However, we cannot agree that this allegation suffices to satisfy the second element of the <u>Continental Bankers</u> test. With respect to the second element, "[t]he 'injustice' must be more than the breach of contract alleged in the complaint." <u>Se. Tex. Inns, Inc., v. Prime Hosp. Corp.</u>, 462 F.3d 666, 675 (6th Cir. 2006); <u>see also</u> Gevurtz, <u>supra</u>, at 872 (commenting that the mere fact that an entity did not perform under a contract does not make the promise fraudulent or wrongful).

We do not doubt that the Plaintiff was aggrieved when RSN broke its lease. Nevertheless, the complaint reveals that the Plaintiff voluntarily chose to contract with RSN alone.[15] Nowhere does the Plaintiff allege that he was misled in any way or that he was the victim of material misrepresentations. <u>See</u> Gevurtz, <u>supra</u>, at 870 (identifying "statements or actions by the defendant which misled the creditor into doing business with the corporation" as a potential example of the wrongdoing element); Krendl & Krendl, <u>supra</u>, at 20–21 (identifying "misrepresenting the state of affairs to a potential plaintiff" as a potential example of the "improper purpose" element). Nor does the complaint contain any allegations of abusive self-dealing or siphoning of assets to frustrate the Plaintiff. <u>See</u> Gevurtz, <u>supra</u>, at 875 (identifying "self-dealing" as a potential example of the wrongdoing element); Presser, <u>supra</u>, § 1:12 (identifying "siphoning off assets in a manner clearly designed to frustrate the expectations of creditors" as a potential example of the "abuse" element).

So far as the complaint shows, the Plaintiff accepted the relationship among the entities and agreed to look to RSN with respect to the obligations of the lease. The record indicates that, unfortunately for the Plaintiff, RSN ceased operation during the lease. However, the "mere fact that the company ceased operation without being able to pay all

---

[15] The Plaintiff did not require any other entities or individuals to sign as guarantors on the lease.

of its debts is . . . not the sort of injustice contemplated [in the veil-piercing analysis]." Int'l Union, United Auto., Aerospace and Agric. Implement Workers of Am. v. Aguirre, 410 F.3d 297, 303 (6th Cir. 2005) (quoting NLRB v. Fullerton Transfer & Storage Ltd., Inc., 910 F.2d 331, 341 (6th Cir. 1990)); see also Edmunds, 403 S.W.3d at 833 (stating that a corporate entity may not be disregarded simply because it is unable to pay its debts).[16] Not every business entity is able to pay its debts, but that fact, standing alone, does not represent fraud, wrong, or injustice under the second Continental Bankers element. The Plaintiff's complaint, however, alleges nothing more.

The Plaintiff attempts to bolster his argument by pointing to facts gleaned from discovery that occurred between the parties while litigating the Defendant's motion to vacate. The Defendants argue that considering such evidence, rather than basing review strictly on the complaint, is improper, even though the procedural posture entails a review of the trial court's decision to deny the motion to vacate. We need not resolve the Defendants' contention. Even considering the discovery evidence suggested by the Plaintiff, we cannot conclude that it raises his right to relief beyond the speculative level.

The Plaintiff points to a purported lack of membership certificates for the companies (by virtue of an alleged failure to produce them in discovery), as well as the fact that all three companies were managed by and indirectly owned by a single individual. These allegations may well bear on the control element. However, we do not believe they bear on the fraud, wrong, or injustice element any more than the other allegations in the complaint that pertained to the control element.

The Plaintiff also points to a stipulation that occurred during the discovery process. The Plaintiff requested that the Defendants identify "any paid in capital that has been collected" by RSN or the Defendants, including the date, amount, and payee. The Defendants responded that RSN and the Defendants each were capitalized "by a loan from its member."[17] However, because the companies had not operated since October 2019, the Defendants indicated that they had not been able to locate records that would disclose the amounts and dates of the loans. As a result, the parties entered the following stipulation:

> Plaintiff has sought the production of Defendants' bank records to aid in opposing the Motion to Vacate Default Judgment. Defendants shall not be required to produce their bank records at this time. However, there shall be an adverse inference against Defendants associated with the failure to produce these bank records. In other words, the Court grants an inference

---

[16] Indeed, "if an unsatisfied judgment were the only fact necessary to establish [the] injustice [element], the corporate form would be disregarded in virtually every case." Marshall v. Jackson, No. M2007-01764-COA-R3-CV, 2008 WL 5156312, at *9 (Tenn. Ct. App. Dec. 8, 2008).

[17] The record indicates that each company had a single member: a separate corporation for each company.

that Defendants' bank records would be adverse to Defendants' position, i.e., they instead support the veil piercing / alter ego allegations in the complaint. This is without prejudice to Plaintiff's right to seek the production of these bank records in the event the Motion to Vacate Default Judgment is granted, nor shall it be construed to preclude Defendants from opposing the same.

The Plaintiff suggests that this stipulation qualifies for consideration under several <u>Allen</u> factors not addressed by the other factual allegations. In particular, the Plaintiff contends that the stipulation satisfies factor one (whether there was a failure to collect paid-in capital), factor two (whether the corporation was grossly undercapitalized), factor nine (the use of the corporation as a subterfuge in illegal transactions), and factor ten (the formation and use of the corporation to transfer to it the existing liability of another person or entity).

Again, in our view, the <u>Allen</u> "factors" are not controlling in this case. Instead, the <u>Continental Bankers</u> elements provide the standard for piercing the corporate veil. Moreover, we conclude that, in fact, the stipulation does not address factor nine ("the use of the corporation as a subterfuge in illegal transactions") or factor ten ("the formation and use of the corporation to transfer to it the existing liability of another person or entity"). Simply put, the lack of records of paid-in capital—and the resulting vague stipulation entered into by the parties—does not represent an allegation of illegal transactions or that RSN was formed or used to transfer the existing liability of another person or entity.

As for the factors pertaining to whether there was a failure to collect paid-in capital (factor one) and whether the companies were grossly undercapitalized (factor two), the stipulation suffers from the same shortcomings as previously described. Regardless of whether the stipulation touches upon the circumstances listed in <u>Allen</u>, it does not cure the deficiencies regarding the fraud, wrong, or injustice element. The vague stipulation that the bank records would "support Plaintiff's veil piercing / alter ego theories" does not suffice to constitute an allegation of fraud, wrongdoing, or injustice associated with the purported failure to collect paid-in capital and undercapitalization. Nowhere did the Plaintiff allege that he was misled in this regard. Consequently, we conclude that the stipulation does not raise the Plaintiff's right to relief beyond the speculative level.

Based on the foregoing, we have determined that the Plaintiff's factual allegations did not sufficiently address the second and third <u>Continental Bankers</u> elements. Although the allegations touched upon some of the circumstances listed in <u>Allen</u>, there were no allegations that the corporate form was misused to commit fraud, wrong, or injustice, nor that any such wrongdoing led to the injury from which the Plaintiff seeks relief. Any such inferences from the Plaintiff's allegations were purely speculative. Thus, we conclude that the Plaintiff failed to articulate a claim for piercing the corporate veil. <u>See</u> <u>Russell Barnett Ford of Tullahoma, Inc. v. H & S Bakery, Inc.</u>, 398 F. Supp. 3d 287, 300 (E.D. Tenn. 2019)

(finding that the plaintiff failed to state a claim for piercing the corporate veil because the complaint lacked allegations as to wrongdoing and causation).

### *E. Disposition*

In denying the Defendants' motion to vacate the default judgment, the trial court analyzed the Plaintiff's factual allegations under the <u>Allen</u> factors and declined to consider the <u>Continental Bankers</u> elements. In this way, the trial court applied an incorrect legal standard. Based on our review under the correct standard, we agree with the Court of Appeals that the Plaintiff failed to allege sufficient facts to articulate a claim for piercing the corporate veil. Therefore, we conclude that the trial court erred in denying the Defendants' motion to vacate the default judgment.

The Court of Appeals, despite concluding that the complaint failed to state a claim for relief, did not dismiss the complaint. Instead, recognizing "the willingness of Tennessee courts to permit amendments under Rule 15.01," the Court of Appeals remanded the case to the trial court for further proceedings consistent with its holding. <u>Youree</u>, 2023 WL 3721938, at *8. In their brief to this Court, the Defendants do not take issue with this treatment by the Court of Appeals, and they simply request that the judgment of the Court of Appeals be affirmed. Accordingly, we also will remand this case to the trial court for further proceedings consistent with this opinion.

### III. CONCLUSION

We conclude that the <u>Continental Bankers</u> elements remain the proper framework for piercing the corporate veil under Tennessee law in all cases, whether involving a parent-subsidiary relationship or a corporation-shareholder relationship. Because the Plaintiff's factual allegations did not articulate a claim for piercing the corporate veil under that standard, the trial court should not have entered a default judgment against the Defendants. Accordingly, we hold that the trial court erred in denying the Defendants' motion to set aside the default judgment. We affirm the judgment of the Court of Appeals reversing the denial of the motion to set aside the default judgment and remanding to the trial court for further proceedings consistent with this opinion.

The costs of this appeal are taxed to the appellant, Charles Youree, Jr., for which execution may issue, if necessary.

_____
JEFFREY S. BIVINS, JUSTICE